DEAN v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. October 29, 1917. Dissenting Opinion November 28, 1917.)

No. 3084.

1. CRIMINAL LAW ☞1159(1)—APPEAL—REVIEW—VERDICT.
    Where there was sufficient evidence to take a case to the jury, the verdict cannot be reviewed.

2. POST OFFICE ☞50—OFFENSES—ALTERATION OF MONEY ORDER—QUESTION FOR JURY.
    In a prosecution for altering a postal money order in violation of Penal Code (Act March 4, 1909, c. 321) § 218, 35 Stat. 1131 (Comp. St. 1916, § 10388), evidence *held* sufficient to carry the case to the jury.

3. POST OFFICE ☞27—ALTERING MONEY ORDER—PRINCIPALS.
    One who knowingly aided or assisted another or others to alter a money order, by raising it from $1 to $21, in violation of Penal Code, § 218 (Comp. St. 1916, § 10388), may, under the direct provisions of section 332 (section 10506), be convicted as a principal.

4. CRIMINAL LAW ☞369(15)—TRIAL—EVIDENCE OF OTHER OFFENSE.
    In a prosecution for altering a postal money order, where accused claimed that the order was not issued to him and that he was not at the place of issuance at that time, testimony by the agent of an express company, at the city where the order was issued, that he recollected seeing accused at that place on the day the order was issued, because a few days after he was called to testify against accused for raising an express money order, is not objectionable, because referring to another prosecution against accused; the evidence being admissible as ground of identification.

**5. CRIMINAL LAW 〰1043(3)—APPEAL—RECEPTION OF EVIDENCE—OBJECTIONS.**

In such case, accused cannot complain in the appellate court on the ground that the language of the witness implied he was guilty of the charge of raising the express money order, where the objection was not made on that theory.

**6. CRIMINAL LAW 〰1169(2)—HARMLESS ERROR—ADMISSION OF EVIDENCE.**

The erroneous admission of improper evidence is cured, where defendant subsequently introduced evidence to the same effect.

**7. CRIMINAL LAW 〰363—EVIDENCE—RES GESTÆ.**

In a prosecution for altering a postal money order, the application on which the money order was issued is admissible as part of the res gestæ.

**8. PROPERTY 〰9—PRESUMPTIONS—OWNERSHIP—POSSESSION.**

Possession of an article raises a prima facie presumption of ownership.

**9. CRIMINAL LAW 〰316—PRESUMPTIONS OF OWNERSHIP.**

In a prosecution for raising a postal money order, where it was desired for purposes of comparison of handwriting, a notebook taken from the possession of accused, who surrendered it without denying ownership, is presumptively accused's property; the jury from such facts being warranted in inferring ownership.

**10. CRIMINAL LAW 〰737—OWNERSHIP—JURY QUESTION.**

Where accused denied ownership of a notebook taken from his possession, the question, in view of the presumption of ownership arising, is for the jury.

**11. POST OFFICE 〰49—ALTERING MONEY ORDER—EVIDENCE—ADMISSIBILITY.**

In a prosecution for altering a postal money order issued at Macon on Saturday, December 26th, where accused denied that the order was issued to him, or that he was in Macon on that day, an entry in a notebook taken from his possession, "Macon 45 Sat. 12/26," was at least slight evidence that accused was in Macon on the day the order was issued.

**12. CRIMINAL LAW 〰491(2)—OPINION EVIDENCE—COMPARISON OF HANDWRITINGS.**

Under Act Cong. Feb. 26, 1913, c. 79, 37 Stat. 683 (Comp. St. 1916, § 1471), providing that, in any proceeding where the genuineness of the handwriting of a person may be involved, any admitted or approved handwriting of such person shall be competent evidence as a basis of comparison, proof of the genuineness of the handwriting admitted as a basis of comparison may be made either directly or by inference; hence, in a prosecution for altering a postal money order, where accused claimed that the order was not issued to him and that he did not alter it, a notebook containing entries of a personal nature, taken from accused's possession, is admissible as a basis of comparison of handwriting, though accused denied that the book was his.

**13. CRIMINAL LAW 〰491(1)—EVIDENCE—COMPARISON OF HANDWRITING.**

In a prosecution for altering a postal money order, accused claimed that the order was not issued to him, but was issued to one B., who employed accused and W., the payee, and that the postal order and express order were sent to accused and W. by B. A memorandum book, taken from accused's possession and containing entries, was offered as a basis of comparison of handwriting on the question of who signed the application. *Held* that, though accused claimed the book belonged to B., yet, as accused could be convicted as a principal if he knowingly assisted others to raise the order, the book was properly received in evidence.

**14. CRIMINAL LAW 〰444—DOCUMENTARY EVIDENCE—AUTHENTICATION.**

In a criminal prosecution, a letter and memorandum book, both of which accused admitted having seen before, were properly received in evidence against him, though he claimed they belonged to another, where the officer arresting him testified that on the morning after the arrest

〰For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the officer in charge of the patrol wagon which took accused to jail delivered the same to him; it appearing that the owners of the book and letter were never in custody.

Batts, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Northern District of Georgia; William T. Newman, Judge.

Albert H. Dean was convicted of having altered a postal money order, in violation of Penal Code, § 218 (Comp. St. 1916, § 10388), and he brings error. Affirmed.

Harrison Jones and Stiles Hopkins, both of Atlanta, Ga., for plaintiff in error.

Hooper Alexander, U. S. Atty., and W. Paul Carpenter, Asst. U. S. Atty., both of Atlanta, Ga.

Before WALKER and BATTS, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. The plaintiff in error was convicted in the District Court for a violation of section 218 of the Penal Code, in having altered a postal money order, issued at Macon, Ga., on December 26, 1914, for the sum of $1, payable to Charles A. Wells at Atlanta, Ga.; the alteration consisting of raising it from $1, as issued, to $21, by writing the figure "2" before the figure "1" on the face of the money order, and by writing the word "twenty" before the word "one" where it appeared on the face of the order and its coupon.

The errors assigned and argued with earnestness and ability by counsel assigned by the District Judge to defend the plaintiff in error are based upon the alleged admission of illegal evidence and upon the insufficiency of the evidence to support a conviction. The facts in the case, briefly stated, follow:

The evidence of the plaintiff in the court below tended to show that the defendant was in Macon on December 26, 1914, and that on the morning of that day an application was made to the postmaster at Macon for a money order in the sum of $1, payable to Charles A. Wells at Atlanta, by some one who signed the name of M. M. Clark to the application. The application itself was introduced in evidence by the plaintiff. The postmaster was unable to identify the person who applied for and to whom the money order was issued. An agent of the Southern Express Company at Macon identified the defendant as a person whom he saw in Macon on the morning of December 26, 1914, and again in Atlanta in his trial in the state court a few days thereafter. The evidence of the plaintiff next accounted for the defendant in Atlanta on the evening of December 26, 1914, between 5 and 9 o'clock, at the place of his arrest, where he attempted without success to pass a Southern Express money order on a merchant named Jacobs. After leaving Jacobs' place of business, he was placed under arrest by a detective named Vickery, and, on request, he turned over to this officer the express money order, the letter and the envelope, under which it was inclosed, purporting to be addressed to the defendant at Atlanta and mailed from Macon at 11 o'clock in the morning of December 26, 1914, by M. M. Clark. He also turned over to the officer a

personal memorandum book, which he took from his pocket with the other documents, and which was introduced in evidence by the plaintiff along with them. The book contained, among others, this entry "Macon 45 Sat. 12/26." In addition, the plaintiff introduced in evidence the postal money order, on which the prosecution was based, together with a letter purporting to be dated at Macon, Ga., December 26, 1914, addressed by M. M. Clark to Charles Wells, reciting the inclosure of a money order in payment of addressee's last week's work for the writer, and the envelope inclosing it, postmarked at Macon, December 26, 1914, at 11 a. m., and addressed to Charles A. Wells, General Delivery, at Atlanta, returnable to M. M. Clark, at Macon, if not delivered to addressee within five days. The plaintiff's evidence tended to show that these documents were delivered by one Brazelton, who was dead at the time of the trial in the District Court, to the witness Vickery on the morning succeeding the arrest of the defendant the preceding night. The evidence of the plaintiff also tended to show that Brazelton was the officer, who had charge of prisoners, who were taken to the station in the city patrol wagon, and that the witness Vickery had turned the defendant over to Brazelton on the night of his arrest, to be taken to the police station in the patrol wagon. The defendant's counsel objected and excepted to the introduction of all the documentary evidence mentioned. The evidence of the plaintiff also tended to show that a train left Macon at about 1:30 p. m. of December 26, 1914, and arrived in Atlanta on the evening of the same day at about 5 p. m.

The defendant introduced evidence tending to show that on the night of December 26, 1914, after 11 p. m., a man passed a Southern Express money order for $23 on one L. Austern in Decatur street, Atlanta, representing himself to be Charles A. Wells, in payment of an overcoat purchased by him from Austern. The witness Austern testified that he saw the defendant a few days after this occurrence, and that the defendant was not the man who passed the Southern Express money order on him. The defendant, testifying in his own behalf, said that he met one M. M. Clark in Jacksonville on December 14, 1914, and was employed by him to help him take orders and put up signs with gold letters, a sample of which he exhibited in court; that he worked on a 50 per cent. commission basis in Waycross on December 21st and 22d, in Macon on December 23d and 24th, and took $43 in orders, of which his share was $21.50; and that during the same time a man named Charles A. Wells also worked for Clark in the same way, and earned, on the same basis, during the same period, $23; that Wells and the defendant left Macon on Christmas Day at 1:30 p. m., and arrived in Atlanta at 5 p. m. the same day, leaving Clark in Macon, with a mutual understanding that Clark was to meet the defendant and Wells at the post office in Atlanta on the evening of December 26, 1914, at 6 p. m.; that Wells and the defendant were there at the appointed time, but Clark failed to meet them, and that they then each asked for mail at the general delivery window of the Atlanta post office, and each received a letter from Clark; that the defendant received the express money order for $21.50, which he presented afterwards to Jacobs for payment; that Wells received an express money order in his letter for

$23, and also a postal money order for $1, the purpose of which was not disclosed, nor any mention made of its presence in the letter of inclosure. The defendant denied that he ever had the letter addressed to Charles A. Wells, or its inclosures, in his possession, and asserted that his only connection therewith was to see them in the possession of Wells at the Atlanta post office. The defendant denied that he made the application for the post office money order and that he was in Macon on the day it was issued, or that he had anything to do with its alteration, or knew that it had been altered. The defendant admitted that the memorandum book was in his possession, when arrested, but denied that it was his, or in his handwriting, asserting that it was Clark's, and that he borrowed it from Clark, while on the train, and tore from it a leaf to write a letter, and forgot to return it to Clark, and knew nothing about the entries in it. The defendant testified that the express money order, which he attempted to pass on Jacobs, was originally drawn for $1.50 and raised to $21.50, and that the postal money order, which was the basis of the prosecution, was originally drawn for $1 and raised to $21. The defendant testified that he had no connection with the raising of any one of the three money orders.

[1] The facts are stated with fullness, because of the earnest contention of the counsel for plaintiff in error, presented with ability to the court, that, conceding that all evidence that went to the jury was admissible, still there was not sufficient evidence to support the verdict of conviction. In the case of Crumpton v. United States, 138 U. S. 361, 362, 11 Sup. Ct. 355 (34 L. Ed. 958) the Supreme Court said:

"It is clear that the question, whether the verdict was contrary to the evidence, which is the first error assigned, is not one which can be considered in this court, if there were any evidence proper to go to the jury in support of the verdict.'"

And again, after setting out the evidence, the court said (138 U. S. 363, 11 Sup. Ct. 356 [34 L. Ed. 958]):

"There is no doubt that this testimony was sufficient to lay before the jury, and it would have been improper to direct a verdict for the defendant. The weight of this evidence, and the extent to which it was contradicted or explained away by witnesses on behalf of the defendant, were questions exclusively for the jury, and not reviewable upon writ of error. If the verdict were manifestly against the weight of the evidence, defendant was at liberty to move for a new trial upon that ground; but that the granting or refusing of such a motion is a matter of discretion is settled in Freeborn v. Smith, 2 Wall. 160 [17 L. Ed. 922]; Railway Co. v. Heck, 102 U. S. 120 [26 L. Ed. 58], Lancaster v. Collins, 115 U. S. 222 [6 Sup. Ct. 33, 29 L. Ed. 373], and many other cases in this court."

The question, therefore, is whether there is any evidence in the record in support of the verdict, and not whether the jury reached a right conclusion from it. The time at which this determination is to be made is at the conclusion of all the evidence—that of plaintiff and defendant.

[2] The alteration of the postal money order is established. The circumstances tending to connect defendant with the alteration of the postal money order, as they appear in the government's evidence, are: (1) The fact (denied, however, by defendant) of his presence in Macon

on the morning when the application was made and the order issued. This, of itself, is obviously insufficient. (2) The fact that the postal money order is testified to have been received on December 27th by the witness, who produced it on the trial, from the person who, the evidence tends to show, was in charge of the defendant on his trip to the police station in the patrol wagon from the place of his arrest. (3) The documents introduced as standards of comparison of the handwriting on the application with that of the person who wrote the documents, who was shown by a tendency of the evidence to have been the defendant.

If the jury found that the entries in the memorandum book, introduced in evidence by the plaintiff, were in the handwriting of the defendant; that the handwriting of such entries and that of the application for the postal money order were identical, the jury might well infer that the defendant wrote both the entries in the book and the application for the money order, and, finding that the handwriting of the money order was his, might well infer that the money order was issued to him, and, in that event, the inference might reasonably be indulged that the person to whom the postal money order was issued was the person who altered it. If the documents are to be considered as evidence in the case for the purpose of comparison of handwritings, then they constitute some evidence before the jury to connect the defendant with the raising and alteration of the postal money order.

These are the items of evidence in the plaintiff's case. It is not worth while considering whether of themselves they are sufficient to connect defendant with the alteration, as they are properly to be considered along with the evidence introduced by the defendant. The defendant's evidence consisted of his own testimony and that of the witness L. Austern. The latter adds no strength to the case of the government, and weakens it to the extent that it has for its basis that the defendant and Wells were one person. The evidence of the defendant in his own behalf does establish a connection between the defendant and the postal money order. The defendant's evidence is not a general denial of all knowledge of the existence of such a money order. He admits having seen it, as he says, in the post office at Atlanta in Wells' possession and before it was altered. He denies, however, having any other or further connection with it. In weighing the effect of this denial is to be considered the evidence tending to show that it was recovered from a source that might have indicated to the jury that it continued in the defendant's possession till after his arrest. His denial is also to be considered, in view of his explanation of how he came to see the postal money order, and the reasonableness of his story, which limited his connection to this momentary glance. That story was that he and Wells had worked for Clark in Macon and Waycross, and had preceded him to Atlanta, and had his promise to meet them there in person and pay them for the work they had done. He failed to so meet them. They immediately resorted to the general delivery, though there was no understanding with or advice from Clark to that effect, and each claims to have received separate letters from Clark, inclosing their wages in the form

of express company money orders (one of which, at least, is admitted to have been raised), with no explanation as to why the sender had failed to meet them in person, or why he could have anticipated that, in default of such meeting, they would inquire for letters from him.

[3] It is also to be considered that defendant testified that the letter to Wells inclosed a postal money order for $1, for the sending of which to Wells by Clark neither defendant nor Wells could rationally account then, and as to which the defendant offered no reasonable explanation on the trial. It is also to be considered that the two express company money orders, one of which was admittedly raised, were presented for payment at places other than the post office on which they were drawn and to persons theretofore unknown to the holders. It is also to be considered that the existence of Wells and Clark was supported only by the testimony of defendant, though two years had elapsed between the occurrence and the trial; also it is to be considered that the judge and jury in the court below had the advantage over this court of seeing the defendant and judging from his demeanor. If, as the plaintiff contended, there were no such persons as Wells and Clark, the inference is irresistible that defendant altered the money order himself, since there would then have been no other concerned in it. If Wells and Clark were actual persons, then, in view of the record, it was certainly for the jury to say whether they and the defendant were confederates, or whether or not the defendant's story of his innocent connection with them, and with the postal money order through them, was reasonable. If they concluded that he knowingly aided or assisted Wells or Clark, or both, to alter the money order, though the change was not made by him, he would be guilty of violating section 218, and could be held guilty under an indictment charging him as a principal, under section 332 of the Penal Code. We think, for the reasons assigned, that there is evidence in the record to support the verdict, and, that being true, within the rule laid down by the Supreme Court in the case of Crumpton v. United States, supra, we have no power to revise the verdict of the jury, upon this writ of error.

[4-6] The first assignment relating to the admission of evidence claimed to have been improper is based on the testimony of the Southern Express Company's agent at Macon that he recollected seeing defendant at Macon in the early forenoon of December 26, 1914, "definitely, because a few days after that I was called to Atlanta to testify against this man, Dean, for raising a Southern Express Company money order." It is contended that the mention of the case against defendant in the state court was prejudicial to the defendant in this case. The witness, to fortify his identification of the defendant on trial with the person he saw in Macon on December 26, 1914, was, however, entitled to state on what other occasion thereafter, and before the trial in the court below, he had again seen the defendant. For this purpose it was proper for him to testify that he again saw defendant in the state court when on trial there. If his language implied that Dean was guilty of the charge on which he was there tried, which seems doubtful, the objection was not made upon that ground, but upon the ground that the evidence was immaterial, and the court would doubtless have cor-

rected any such implication, if its attention had been directed to it. The error, if any, in the admission of this evidence, was cured by the subsequent testimony of the defendant himself with reference to his former trial in the state court.

[7] The second assignment, relating to matters of evidence, is based upon the court's permitting the original application for the postal money order to be given in evidence. The prosecution being based on the alleged alteration of the money order, it was competent for the government to introduce the application, upon the authority of which it was issued, as part of the res gestæ of the transaction, and without first proving that the application was in the handwriting of the defendant on trial.

[8-11] The third assignment of error is based on the admission in evidence of the memorandum book, which the defendant took from his pocket and surrendered to the arresting officer, together with the express company's money order, at the time of his arrest. The book was submitted to the jury for two purposes: (1) As evidence tending to show that defendant was in Macon on December 26, 1914; and (2) for the purpose of forming a basis of comparison of the handwriting of the defendant with the handwriting on the application for the postal money order. The defendant objected to it for all purposes, and asked the court to limit its effect, so as to exclude it as a basis of comparisons, and excepted to its admission generally and to the refusal of the court to so limit it.

The evidence with relation to it consists in the undisputed fact that defendant had it in his pocket when arrested; in the character of the book itself, and of the entries contained in it, and of the defendant's denial that the book was his, or the entries in his handwriting, and of his explanation of how he came by it. The contention of the defendant is that the fact that the book was in his possession was evidence neither (1) that it was his, nor (2) that, if his, the entries were in his handwriting.

As to the first point, we think that possession in a case like this should be considered prima facie evidence of ownership, so as to shift the burden of showing the contrary to the defendant, found in possession. The general rule in civil cases is that possession is some evidence of ownership. In criminal cases, where the defendant's evidence is not constitutionally available to the government, the need for and reason of the rule is more evident. If there is nothing on the face of the article that negatives the presumption of ownership, arising out of possession, we think the proper rule to be that the jury is authorized, if they see fit, to infer ownership from the fact of possession unexplained. The explanation, when given, and its reasonableness, is a question for the jury, and does not affect the admissibility of the evidence, unless it shows without conflict that the ownership was elsewhere than in the possessor. The inference of ownership would be strengthened, when the article was surrendered voluntarily by the possessor and without denial of ownership, and when it was, like a pocketbook or a diary, of a kind ordinarily carried on the person of the owner, as was true in this case. We think the inference of ownership might have been drawn in this case from the possession of the memorandum book. If it was de-

fendant's book, then the entry, "Macon 45 Sat. 12/26," was, at least, slight evidence that the owner of the book was in Macon on December 26, 1914, which was Saturday in that year. For this purpose, the book was admissible.

[12] The court below also permitted the jury to consider it as a basis of comparison as the defendant's handwriting. This implied that it was proven to be in the defendant's handwriting. The act of Congress approved February 26, 1913 (37 Stat. 683), provides that in any proceeding before a court or judicial officer of the United States, where the genuineness of the handwriting of any person may be involved, any admitted or proved handwriting of such person shall be competent evidence as a basis of comparison by witnesses, or by the jury, court, or officer conducting such proceedings, to prove or disprove such genuineness. There was no evidence of the identity of the writer of the entries, other than the character of the book and the fact that it came from the person of the defendant. The defendant contends that no inference of authorship can be indulged from these facts. It is certainly true that mere possession of a writing does not necessarily imply authorship. Letters addressed to the possessor would be inferred to be in the handwriting of another than the possessor. The room for such an inference depends upon the character of the book or document containing the writing. When the book containing the entries is a personal memorandum book, such as the owner customarily keeps in his own handwriting, such as a diary or an order book, or a memorandum of a personal itinerary, we think the character of the book and the custom of the owner of such a book to write the entries in it himself circumstances sufficient to go to a jury, and from which they may infer, if satisfied of it, that the owner or possessor of the book made the entries in it. The principle should apply only to the class of documents or books which are customarily and of common knowledge kept personally by the owner. The original memorandum book, introduced in the court below, has been sent up to this court, and an inspection of its contents and entries and of the book itself convinces us that it was of this class, and that the court did not err in refusing to restrict the purpose of its use by the jury, so as to exclude it as a basis of comparison of defendant's handwriting.

The case of McCombs v. State, 109 Ga. 496, 34 S. E. 1021, concerns the finding of two letters on the accused, and it does not affirmatively appear from the report of the case that they were letters of such a nature as would have customarily been written by the possessor. The case of Van Sickle v. People, 29 Mich. 61, concerns a diary, and would seem to oppose the view we have taken. Every case must depend on its own facts, so far as those facts depend upon the nature of the document and the circumstances of its possession by the accused. Handwriting, admitted to be used as a basis of comparison under the act of Congress, is not required to be proven genuine in any other way than is any other document offered in evidence. Proof of genuineness, under the act of Congress, may arise from inference, providing the inference is convincing beyond a reasonable doubt, when the case is a criminal one. Direct evidence is a mode, but not the exclusive mode, of proof. Inference from the admitted facts that only one person had ac-

cess to a paper, originally blank, and on which writing was afterwards discovered, that such person was the writer, would be irresistible and sufficient. We do not think it can be said that the genuineness of a writing, for use as a basis of comparison under the act of Congress, must be proven by any peculiar mode of proof, or that it cannot be inferred from possession, where the circumstances and character of the possession and of the instrument itself are persuasive enough of its authorship. The defendant's constitutional privilege of refraining from giving evidence against himself by word of mouth, or by furnishing specimens of his handwriting, is an additional reason for not construing the act of Congress so as to require a different degree or kind of proof than that ordinarily required to prove the genuineness of handwriting.

[13] If the memorandum book, as claimed by defendant, was Clark's, and in his handwriting, it was properly admitted, as there was evidence tending to show that Clark and the defendant were confederates, and that defendant may have knowingly assisted Clark to alter the money order, though Clark applied in person for it. The defendant could have been convicted as a principal under the indictment for so knowingly assisting. Penal Code, §§ 218 and 332. It was competent to offer the memorandum book as a basis of comparison with the handwriting of the application, whether the handwriting of each was that of Clark or that of the defendant.

[14] The last assignment, relating to the admission of evidence, is based upon the admission of the envelope, letter, and post office money order, on which the prosecution is based. The evidence as to them consists of the statement of the witness Vickery that they were turned over to him, according to his best recollection, by Brazelton, who, according to his best recollection, was in charge of the defendant, while he was conveyed to the station in the patrol wagon, on the morning after defendant's arrest, and that of the defendant himself, who testified that he saw them for the first and last time in the possession of Wells at the Atlanta post office, on the evening of Saturday, December 26, 1914, at 6 p. m. The defendant, according to his own admission, had previous to his arrest seen the documents. His limitation of his connection with them to sight, while in the possession of another, may not have found credit with the jury. Wells was never arrested, was never in the patrol wagon, or in charge of Brazelton, and had no opportunity to confer possession of the documents on Brazelton. Possession of them, by the defendant's testimony, once lay in a sense with Wells and defendant. The defendant had ample opportunity to place Brazelton in possession of them. Wells had none. The documents are traced to the possession of Brazelton, and shown to have been produced on the trial from it. We think this justified the action of the court in admitting them in evidence.

We find no reversible error in the record, and the case is affirmed.

BATTS, Circuit Judge (dissenting). If in a criminal case it is claimed that the verdict is against the weight of the evidence, it is within the discretion of the trial judge to determine whether it shall be set aside, and his action will rarely be reviewed on appeal. If,

246 F.—37

however, there is an absence of conflict in the testimony, or if, assuming the truth of all the evidence adverse to defendant, the evidence is insufficient to establish his guilt, a failure of the trial judge to direct a verdict, or to set aside a verdict of guilty, is error for which the judgment should be reversed. The guilt of the defendant should be established by competent evidence beyond reasonable doubt, and to permit a verdict based upon evidence from which guilt cannot be inferred is to approximate an error of law.

The defendant in this case was convicted, and the District Judge refused to set aside the verdict. All of the facts adverse to the defendant may be thus summarized: (1) He was at Macon, Ga., on December 26, 1913. (This fact he, denied.) (2) On that day an application for a money order for $1 was made by a person signing his name M. M. Clark; payee, Charles A. Wells. (The postmaster testified that the application was for $1.50.) (3) The money order was issued in accordance with the application. (4) At 6 o'clock defendant saw Charles A. Wells at the post office at Atlanta, with the money order for $1 in his possession. (5) The defendant was arrested between 5 and 9 o'clock on that day. (6) He was taken to the jail in a patrol wagon. (7) At the time of his arrest he delivered to the arresting officer a small book, originally a blank book, in which was writing, and a letter, which purported to be signed by M. M. Clark, to the effect that the writer had sent to the defendant an express money order, the envelope postmarked "Macon." (8) The book, application for money order, and money order said to have been raised were introduced in evidence.

In addition to these facts, either proved satisfactorily or assumed to be true for the purposes of this opinion, the witness Vickery testified that, at a date which, to the best of his recollection, was the 27th of December, 1913, he received, to the best of his recollection, from one Brazelton, who, to the best of his recollection, was in charge of the prisoner while he was in the patrol wagon after arrest, the money order. There was no evidence as to the condition of the money order at the time it was received by him, and no evidence that it was in the same condition at the time of trial as when he first saw it.

All the other evidence in the case was either favorable to the defendant, or was without probative force. It is detailed in the opinion of the court. The facts summarized are, of course, insufficient to establish the guilt of the defendant. In addition to this, however, the jury had before them the handwriting in the application, in the money order, and in the book given up by defendant. There was no expert testimony with reference to handwriting. An examination of the book referred to suggests the possibility that the entries were in the hands of more than one person. The jury, however, may have concluded that all of the writing in this book, the application for the money order, and the word "twenty," assumed to have been inserted in the money order after issue, were in the same handwriting. Assuming the handwriting the same, facts established and assumed are still insufficient proof of the guilt of defendant.

There is no proof that any of the writing was in the hand of the defendant. To sustain the conviction this process is indulged: The

book is a memorandum book found in possession of defendant; it is therefore his book; it is his book and has writing in it; the writing is therefore in his hand. From possession, ownership is inferred; from ownership, handwriting is inferred; from similarity of handwriting, guilt is inferred; or, if guilt is not inferred from the handwriting, it is assumed from facts entirely insufficient as proof. Among all the inferences and assumptions there is one presumption that should not have been ignored—the innocence of the defendant.

The book used as the basis for comparison of handwriting was a small pocket blank book, belonging, defendant testified, to M. M. Clark. On alternate pages throughout the book was writing in ink, as follows:

Donin Adr. Co.                                           23
    Norfolk, Va.                Lumberton, N. C.
To
F. 246. A Burt
    no blanks.                                     6 qts. $1.00
                                               .15
                                             ————
                                             .85

There were a number of names and addresses of individuals. There were in ink two lists of names of cities with dates following, as:

Waycross 15 Thurs; Maccon 45. Sat 12/26; Atlanta 160. Tues; Lynchburg, 35 Sat 1/16; Memphis 140 Sat 2/6.

The book was primarily introduced to establish that the defendant was in Macon on December 26th. It was no more proof of that fact than of the fact that he was at Lynchburg on the 16th of January, when, according to the testimony, he was in jail at Atlanta. If, however, it was not erroneous to introduce the book as evidence of something which it had no tendency to prove, its use by the jury should have been confined to that purpose, when objection was made to its use as a basis for the comparison of handwriting.

The federal law has liberalized the rule with reference to the standard to be used in comparison of handwriting, but it is still necessary that the standard be proved or acknowledged. This requirement has not been met. The only authority brought to our attention distinctly so holds. Van Sickle v. People, 29 Mich. 61.

If the view expressed to the effect that, where the evidence against the defendant is accepted as true, but is insufficient to establish guilt, an appellate court should reverse the action of the trial judge in refusing to set aside the verdict of guilty, is erroneous, this case should, nevertheless, be reversed for the error in permitting the use of the memorandum book as the basis for a comparison of handwriting.

Witnesses for the government, over the protest of earnest and capable attorneys appointed by the court to defend the accused, injected into their testimony the fact that defendant had been convicted of raising an express money order. It may be suggested that any resulting error was cured by the fact that defendant felt impelled to, or did thereafter, make a statement concerning this conviction. But, whether there was error or not, the fact of conviction, while it did not prove the present charge, doubtless had much effect in inducing

a verdict inadequately supported by the evidence. Defendant was a stranger, without friends, without funds, with a prison record. The conditions peculiarly called for care on the part of the prosecuting officers and the court in the preservation of his rights; and few rights are more substantial than that which arises from a presumption of innocence until guilt is established by competent evidence beyond a reasonable doubt.

I dissent from the judgment of affirmance.