BIGGERSTAFF v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. October 30, 1919.)

No. 5342.

1. CRIMINAL LAW ⬥100(2)—INDICTMENT IN DIVISION OF DISTRICT OTHER THAN THAT IN WHICH CRIME WAS COMMITTED.

Though an indictment was found in a division other than that in which the offense was charged to have been committed, and to which division the case was transferred for trial, there was no violation of Judicial Code, § 53 (Comp. St. § 1035), requiring all "prosecutions" to be had within the division of the district where the crime is charged to have been committed, unless the prosecution be transferred to another division; the finding of the indictment and the proceedings leading up thereto not being a part of the prosecution.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Prosecution.]

2. PROSTITUTION ⬥1—COMMISSION OF IMMORALITY ON INTERSTATE JOURNEY NOT VIOLATION OF WHITE SLAVE ACT.

A violation of the White Slave Act (Comp. St. §§ 8812–8819) requires that the transportation in interstate commerce shall be for an immoral purpose, and the mere commission of an immoral act by defendant while on an interstate journey with a woman for a lawful purpose does not, where the immorality was merely casual, constitute a violation of the White Slave Act.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Henry Howard Biggerstaff was convicted of violating the White Slave Act, and he brings error. Reversed, and remanded for new trial.

E. J. Burkett, of Lincoln, Neb. (Burkett, Wilson & Brown, of Lincoln, Neb., on the brief), for plaintiff in error.

T. S. Allen, U. S. Atty., of Lincoln, Neb. (F. A. Peterson, Asst. U. S. Atty., of Omaha, Neb., on the brief), for the United States.

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before HOOK and STONE, Circuit Judges, and AMIDON, District Judge.

HOOK, Circuit Judge. Biggerstaff was convicted and sentenced for violating the White Slave Traffic Act of June 25, 1910 (36 Stat. 825, c. 395 [Comp. St. §§ 8812–8819]). The offense was charged to have been committed in the Chadron division of the district of Nebraska. The indictment was found and returned in the Omaha division by a grand jury drawn from the district at large, and thence transferred to the Chadron division for trial.

[1] A demurrer to the indictment, which was overruled, specified as a ground that the finding and return of the indictment in the Omaha division was contrary to section 53 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1101 [Comp. St. § 1035]), which says:

"All prosecutions for crimes or offenses shall be had within the division of such districts where the same were committed, unless the court, or the judge thereof, upon the application of the defendant, shall order the cause to be transferred for prosecution to another division of the district."

The point made turns upon the meaning of the word "prosecutions" as employed in the statute; that is to say, whether a prosecution includes the inquiry of the grand jury and the finding of the indictment. It was proper to draw the grand jurors from the district at large. Clement v. United States, 149 Fed. 305, 79 C. C. A. 243. And if the indictment was lawfully found in the Omaha division, it was lawfully returned there, provided it was afterwards transferred to the proper division for trial. The return of an indictment is naturally made to the court and at the session where the grand jury is performing its functions. We think the term "prosecution," in this statute, means the proceedings which follow the finding and return of the indictment, and does not embrace the preliminary inquiry and the making of the accusation. Until the latter is done there is no case or cause against the accused to be prosecuted. While persons are sometimes held in bail or confinement to await the action of a grand jury, it is not always so. That is merely precautionary. It is the process on the indictment which brings them into court to answer the accusation. It does not necessarily follow that the proceedings of a grand jury are specially directed at the person finally accused. There may at first be no formal charge against any particular person. The probability of the commission of a public offense and of the identity of the perpetrator may not be disclosed until the conclusion of their investigations. Even the locality of the criminal act, whether in one division or another, may at first be in doubt. Except as to some fundamental requirements in respect of the constitution and conduct of grand juries, the persons finally indicted are not entitled to subject their proceedings to the scrutiny and tests of a trial. McKinney v. United States, 199 Fed. 25, 117 C. C. A. 403. In Blair v. United States, 250 U. S. 273, 39 Sup. Ct. 468, 63 L. Ed. ——, the court, in speaking of a grand jury, said:

"It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by

doubts whether any particular individual will be found properly subject to an accusation of crime. As has been said before, the identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury's labors, not at the beginning."

While the inquisition of a grand jury is essential, it is preliminary, and not a part of the definite prosecution of any particular individual. It is in this restricted sense that the term is used in the statute, though in other relations it may have a broader meaning. As confirmatory of this it will be observed that the same section also authorizes the court or judge, upon the application of the defendant, to "order the cause to be transferred for prosecution to another division of the district." Doubtless the same meaning was intended in both connections. It is the cause which follows the indictment that is prosecuted. Still further, in the copies of the Judicial Code prepared under the direction of the Judiciary Committee of the Senate and published by authority of Congress, there is a note to section 53 which says of the provision we have last quoted:

"The purpose of this latter provision is to facilitate the early disposition of criminal cases, especially in minor cases, where the defendant is unable to give bail, and may, in view of the fact that in many divisions but one term of court is held each year, possibly be compelled to remain in jail nearly a year before a trial may be had or before an opportunity will present itself for him to plead guilty."

Manifestly this purpose might often be frustrated, where persons are confined in default of bail to await the action of a grand jury, if it were held that the proceedings of the grand jury, including the finding and return of an indictment, must be in the division in which the offense was committed.

[2] The accused was convicted of violating the first clause of the White Slave Traffic Act, which requires that the transportation in interstate commerce shall be for an immoral purpose specified. The mere fact that an immoral act was committed on an interstate journey does not of itself constitute that essential element of the offense. Its relevance in that respect is evidential, not substantive, and when relied on as evidence of a preconceived purpose care must be taken to regard it in a true perspective. The act may have been a casual incident in the journey, without forethought or anticipation at the time it was begun. Many things, good and bad, occur in that way.

The evidence in this case is so exceptionally coarse and revolting that it will not be discussed in detail. Upon a most careful consideration of it, giving to the verdict of the jury the full credit to which it is entitled, we are of the opinion that there was not sufficient proof of a purpose of the interstate transportation that brings it within the statute. That there was another purpose, lawful, insistent, and pressing, was admitted. It was openly declared and understood by all concerned. It was plain that some one had to accompany the woman on the first part of her journey, from her home to the nearest railroad town, and the accused was naturally the person to go. He was not a volunteer. To say that the journey was undertaken by him with the intention of creating an opportunity within the statute is, we think,

pure speculation. The time, the conveyance, the road, and the other circumstances do not warrant it as a reasonable inference upon which conviction for a crime may stand.

The sentence is reversed, and the cause is remanded for a new trial.