## PARISI v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. January 18, 1922.)

No. 125.

1. **Criminal law ⬤⟹59(3)—Aider and abettor need not be present when offense is committed.**

   It is not necessary that one who aids and abets the commission of a crime shall be present when the crime is committed, to sustain a conviction under Criminal Code, § 332 (Comp. St. § 10506).

2. **Criminal law ⬤⟹406(6), 517(2)—Admissions and confessions, properly obtained after offense, are admissible to show connection with crime.**

   In a prosecution for violation of Anti-Narcotic Law, § 1, as amended by Act Feb. 24, 1919, § 1006 (Comp. St. Ann. Supp. 1919, § 6287g), and section 2 (Comp. St. § 6287h), admissions and confessions by defendant after the sale, alleged to have been made by defendant's agents, which were made in connection with negotiations for a subsequent sale, are admissible to prove defendant's connection with the previous sale.

3. **Poisons ⬤⟹9—Subsequent finding on defendant's premises of drugs similar to those sold by alleged agent is admissible.**

   In a prosecution for violation of Harrison Anti-Narcotic Law, § 1, as amended by Act Feb. 24, 1919, § 1006 (Comp. St. Ann. Supp. 1919, § 6287g), and section 2 (Comp. St. § 6287h), where there was evidence of a sale made by those alleged to have been defendant's agents evidence of the subsequent finding on defendant's premises of large quantity of drugs similar to those sold is admissible against him.

4. **Poisons ⬤⟹9—Evidence held to show connection between defendant and alleged agents.**

   Evidence that narcotics were sold by alleged agents of the defendant after one of them had gone to defendant's house for the declared purpose of obtaining drugs, and that on the following day defendant stated to the buyer that he was the boss of those agents and would sell a large quantity of the drug to the buyer, *held* sufficient to take to the jury the question whether defendant had aided and abetted the sale previously made, and had thus become a principal.

5. **Criminal law ⬤⟹422(1)—Acts and declarations of agents who committed offense are binding on principal.**

   When the prosecution has produced evidence that defendant was the boss, and that those who made the sale of narcotics were merely his agents, the acts and declarations of the agents were binding on the defendant.

In Error to the District Court of the United States for the Southern District of New York.

Santino Parisi was convicted of violating Harrison Anti-Narcotic Act, § 1, as amended by Act Feb. 24, 1919, § 1006, and section 2, and he brings error. Affirmed.

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Phillips, Mahony & Leibell, of New York City (Warren C. Fielding, of New York City, of counsel), for plaintiff in error.

William Hayward, U. S. Atty., and John E. Joyce, Asst. U. S. Atty., both of New York City.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge. The first count charged that on November 9, 1920, Parisi and Saracina sold to one Napolitano three "decks" of narcotic drugs, neither having been registered nor having paid the special tax, as provided in section 1 of the Act of December 17, 1914, as amended by section 1006 of the Act of February 24, 1919 (Comp. St. Ann. Supp. 1919, § 6287g). "Deck," in the language of this traffic, means a small quantity.

The second count charged that the sale was made not in pursuance of a written order as required by section 2 of the Act of December 17, 1914 (Comp. St. § 6287h). It is not disputed that the evidence showed an unlawful sale on November 9, 1920, by Saracina to Napolitano in the absence of Parisi, and the principal question, calling for consideration, is whether certain testimony as to conversations and occurrences on November 10th, were admissible against Parisi as a principal. The testimony may be briefly summarized:

On the night of November 9, 1920, Napolitano met Saracina and a man known as Frank in Madison street, New York City. Pacetta, a revenue agent, with whom Napolitano was co-operating, remained a short distance away to watch what would happen. Napolitano told Saracina and Frank that he "wanted to buy some dope," and they said they would sell him some. Napolitano asked for samples, as Saracina and Frank did not have the drugs with them. Thereupon Frank left, and soon entered the premises 35 Madison street, which was defendant Parisi's home at the time. While Frank was thus absent, Saracina remained with Napolitano. On Frank's return, he gave Napolitano three "decks," one each of morphine, heroin, and cocaine, for which the latter then paid Saracina $3. Arrangements were then made to buy a pound of each drug the following morning.

Napolitano, while observed by Pacetta and other government agents, met Saracina and Frank the next morning, November 10th. They told Napolitano to "come up to the house and you will get the stuff." This Napolitano declined to do, whereupon Saracina told Napolitano to wait with Frank until he (Saracina) saw "the boss." Saracina then went away, and, returning in about ten minutes, said, "The boss don't want to deliver it; if you want it, come over there and get it." Napolitano then left the two men and joined the revenue agents. Napolitano then returned to Madison street, followed by Pacetta some distance behind. There Napolitano was approached by Parisi, who inquired if he liked the samples "that Frank and Saracina give you," and, when answered by Napolitano in the affirmative, Parisi said:

"I am the boss: those fellows are nothing. * * * If you like the stuff, come with me to No. 35 Madison street, and I will show you the stuff."

Napolitano and Parisi then went to the latter's home in 35 Madison street, where Parisi exhibited a large amount of narcotics. He weighed

out a pound of each drug, taking the drugs from bottles contained in valises and suit cases. After the weighing, Parisi said that there were 48 ounces of "stuff," which would cost $1,344, and thereupon Napolitano, who had previously told Parisi that he did not have the money with him, said he would be back about a quarter of 4 in the afternoon. Parisi said:

"If I am here when you come back, give me the money; and if I am not here, give the money to my wife; but I will make sure I am here when you get back."

Parisi then told Napolitano, if he wanted more, to write "macaroni" for morphine, "cheese" for cocaine, and "oil" for heroin, and as he said this he wrote in a small memorandum book. About 5 p. m. of the same day, Pacetta, accompanied with several revenue agents and police officers, examined Parisi's premises, and found a large quantity of morphine, cocaine, and heroin, as well as some smoking opium, with a weighing scale and a complete set of avoirdupois and metric weights. On Parisi's person was a memorandum book, which he admitted was his, and that the writing in it was his. It contained the words "cheese," "macaroni," and "oil," with the letters "c," "h," and "m" written over these words, presumably meaning cocaine, heroin, and morphine.

Defendant took the stand and denied the essential features of the testimony against him, swore he knew nothing about the drugs found on his premises, and attempted to account for them by intimating that it was the property of an elusive boarder, who was never seen after November 10th. Other witnesses were examined on behalf of the prosecution and of the defendant. If the testimony as to the admissions of Parisi on November 10th and the finding of the drugs on his premises was admissible, then the case was obviously one for the jury. Saracina and Parisi were convicted. Frank has disappeared.

[1] The theory of the prosecution was that Parisi was a principal in that he had abetted, aided, etc., Saracina and Frank in making the unlawful sale on November 9th. Criminal Code, U. S. § 332 (Comp. St. § 10506); Ruthenberg v. United States, 245 U. S. 480, 38 Sup. Ct. 168, 62 L. Ed. 414; Jin Fuey Moy v. United States, 254 U. S. 189, 192, 41 Sup. Ct. 98, 65 L. Ed. 214; Dean v. United States, 246 Fed. 568, 574, 158 C. C. A. 538. That it is not necessary that one who aids and abets the commission of a crime need be present when the crime is committed is no longer arguable. Vane v. United States, 254 Fed. 32, 165 C. C. A. 442.

[2, 3] The testimony as to the conversations and events of November 10th was adduced, not for the purpose of proving the commission of a crime on November 10th, but to show that Parisi was a party to the sale by Saracina and Frank the night before. That admissions or confessions made after the commission of a crime are admissible in evidence, when properly obtained, is too elementary for discussion. So, also, the finding later in defendant's possession of a quantity of drugs of the same kind as previously sold is a fact which, with other facts, was properly submitted to the jury.

[4] Parisi's inquiry as to whether Napolitano liked the samples given to him by Saracina and Frank, and his statement that he was "the

boss" and the others were "nothing," and all the other circumstances showing the connection between him and the sellers, Saracina and Frank, were facts properly submitted to the jury, from which it could determine whether or not Parisi had aided in the sale of November 9th, and had thus become a principal.

[5] When the prosecution produced testimony that Parisi was "the boss," and Saracina and Frank merely his agents, their acts and declarations were binding on Parisi. St. Clair v. United States, 154 U. S. 134, 149, 14 Sup. Ct. 1002, 38 L. Ed. 936; Wiborg v. United States, 163 U. S. 632, 657, 658, 16 Sup. Ct. 1127, 1197, 41 L. Ed. 289; Pennachio v. United States (C. C. A.) 263 Fed. 66, 67. There was thus no error in the admission against Parisi of the testimony now attacked, and the case was properly sent to the jury.

Judgment affirmed.