## BORGIA v. UNITED STATES.*
### No. 7670.

**Circuit Court of Appeals, Ninth Circuit.**
July 9, 1935.

*Writ of certiorari denied 56 S. Ct. 135, 80 L. Ed. ——.

Otto Christensen, of Los Angeles, Cal., for appellant.

Peirson M. Hall, U. S. Atty., Jack L. Powell, Asst. U. S. Atty., both of Los Angeles, Cal., for the United States.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

GARRECHT, Circuit Judge.

Appellant, Frank Borgia, and four others, one of whom was Ed Capece, alias Frank Staccio, were indicted, charged with attempting to defraud the United States of the tax on spirits distilled by them; with possession and custody of a still and distilling apparatus not registered with the Collector of Internal Revenue; failure to give said Collector of Internal Revenue notice of such business; with carrying on business as distillers with intent to defraud the United States of the tax on spirits distilled by them; with making and fermenting sugar mash fit for distillation and for the production of spirits in a building other than a distillery duly authorized according to law; and with conspiracy to violate the internal revenue laws of the United States. A second indictment filed about forty-five days later also charged conspiracy, setting forth overt acts. 26 USCA §§ 261, 281, 282, 306, 307; 18 USCA § 88. Demurrer was interposed as to each indictment and was overruled in each instance, except that the demurrer was sustained as to the conspiracy count in the first indictment.

All defendants, save Borgia, pleaded guilty. Borgia pleaded not guilty and proceeded to trial under consolidated indictments. He was found guilty on all counts and judgment entered. Defendant brings this appeal.

On the night of September 22, 1933, dug in the desert near the edge of Muroc Dry Lake, Kern county, Cal., officers found a pit, in length about 200 feet, in width about 80 feet, and 8 feet in depth, roofed with corrugated iron, which was covered with sand and sage brush, so as to make it inconspicuous. The inside of the pit was equipped as a distillery—copper columns, steam boiler, pumps, engine, and a number of redwood vats. These vats were nearly all full of fermenting mash. Four men were present and were taken into custody. Shortly thereafter, one of the officers, leaving the premises, heard the approach of an automobile, which stopped, the driver getting out. As the officer neared him, he ran off and escaped in the darkness. In the truck were a number of new five-gallon cans and fifteen boxes of compressed yeast, from which the labels had been removed by scraping. On cross-examination, the officer who gave the above testimony was able to describe the equipment and give the name of the manufacturer of most of it. It was further brought out that the distillery was located near Muroc, a small town in Kern county with a population of about 100, on the Santa Fe Railway between Mojave and Barstow.

Other witnesses testified over objection of counsel for defendant, as to purchases of sugar, yeast, cans, and redwood tanks by the Italian Wholesale Grocery Company, conducted under that name by Frank Borgia, appellant herein.

It was testified by an adjuster for an automobile finance company that his company received a payment from the Italian Wholesale Grocery Company on an automobile purchased by one Frank Staccio. Another witness, also an adjuster for an automobile finance company, testified that he called at the Italian Wholesale Grocery Company to make a collection on a contract for purchase of a truck by Frank Staccio, was told that Staccio was not in, left his card, and shortly thereafter payment was made.

Two police officers testified that following an automobile accident in the city of Burbank, Cal., at 4:40 a. m. August 21, 1933, in which a truck carrying cans of alcohol was wrecked, that a person calling himself Frank Staccio presented himself at

the police station saying, "I am the driver of the truck, and want to give myself up." He was placed under arrest and booked for possession.

The freight agent for the Santa Fe Railway at Muroc testified as to numerous shipments of sugar arriving there and that they were unloaded at night.

It was also testified that a few of the boxes of yeast found at the distillery showed the label of the "Consumers Yeast Company," which was the same company from which the Italian Wholesale Grocery Company purchased yeast. The labels had been scraped from the other boxes of yeast found in the pit near Muroc.

The manager of the bank at which the grocery company kept its account testified that the ledger card reflected the clearing of two checks for $39, the amount of the contract payments on the truck.

Another witness testified that a carload of sugar billed from Crockett to Muroc was diverted at Bakersfield to the Italian Wholesale Grocery Company at Los Angeles. This was on or about September 25, 1933. The shipment apparently was made on September 22d and was prepaid.

It also appeared that the Italian Wholesale Grocery Company purchased large quantities of five-gallon cans; that it had purchased six redwood tanks which were the exact duplicates of the six redwood tanks of a particular size found at the still and that those tanks bore the initials of the company from which the grocery company had purchased the six tanks; that it had purchased within a day or two preceding the raid 15 fifty-eight-pound boxes of compressed yeast and that 15 fifty-eight-pound boxes of compressed yeast were found on the truck abandoned at the still on the night of the raid; and that 175 five-gallon cans were found on said truck and that the grocery company had very shortly before purchased from the manufacturer over 200 cans of a similar size.

Throughout the trial counsel for defendant objected to the admission in evidence of the testimony given and at the conclusion of the government's case moved to strike. The objections were overruled and the motion to strike denied; exception was taken to the denial. Motion for directed verdict was also denied and exception taken.

It appears that the offenses charged took place in the Northern Division of the Southern District of California. The appellant claims that the indictment should have been returned by the grand jury of the Northern Division of the Southern District of California. The federal grand jury for the Northern Division of the Southern District of California, October term, 1934, was impaneled October 8, 1934, and, from the certificate of the clerk of the District Court, had not been discharged on October 18, 1934. The indictments herein were found by the grand jury in the Central Division of the said district and filed, that in No. 1776, on August 30, 1934, and that in No 1790, on October 17, 1934. Appellant's point is that inasmuch as there was a grand jury impaneled and subject to call in the Northern Division and that the alleged crimes were committed there, the grand jury in the Central Division was without power to return the indictments herein.

It is said in section 53 of the Judicial Code (28 USCA § 114) that "all prosecutions for crimes or offenses shall be had within the division of such districts where the same were committed, unless the court, or the judge thereof, upon the application of the defendant, shall order the cause to be transferred for prosecution to another division of the district."

The Supreme Court, in Salinger v. Loisel, 265 U. S. 224, 236, 237, 44 S. Ct. 519, 523, 68 L. Ed. 989, said:

"The contention is that the word 'prosecution' in the general provision includes the finding and return of an indictment. That the word sometimes is used as including them must be conceded. But there are also relations in which it comprehends only the proceedings had after the indictment is returned. Here we think it is used with the latter signification. It appears twice in the provision, doubtless with the same meaning. The first time is in the clause directing that 'all prosecutions' be had in the division where the offense was committed, and the second is in the clause permitting the court or judge, at the instance of the defendant, to order 'the cause to be transferred for prosecution' to another division. The connection in which it appears the second time shows that it refers to the proceedings after the indictment is found and returned; that is to say, after there is a cause susceptible of being transferred. Besides, had Congress intended to put an end to the prevailing practice of impaneling a grand jury for

the entire district at a session in some division and of remitting the indictments to the several divisions in which the offenses were committed, unless the accused elected otherwise, it is but reasonable that that intention would have been expressed in apt terms, such as were used in some of the exceptional special statutes. * * *

"In our opinion the real purpose of the provision, * * * is to require, where a district contains more than one division, that the trial be had in the division where the offense was committed, unless the accused consents to be tried in another. The Circuit Court of Appeals so held in a well considered opinion in Biggerstaff v. United States, supra [260 F. 926]. The only decision the other way, of which we are advised, was by the District Court for the Eastern District of Louisiana in United States v. Chennault, supra [230 F. 942], and that court receded from that decision in the cases now before us."

Referring to section 53 of the Judicial Code, the Circuit Court of Appeals for the Eighth Circuit said, in Chew v. U. S., 9 F.(2d) 348, 351:

"This provision simply requires that the trial be had in the division where the offense was committed, but does not prevent the impaneling of a grand jury for the entire district at a session in some division, and of remitting the indictments to the several divisions in which the offenses were committed."

In Shaw v. U. S., 1 F.(2d) 199 (C. C. A. 8), appellant was indicted for a crime committed in the Western Division of the Eastern District of Arkansas by the grand jury for the Eastern Division of the said District, the cause was ordered transferred for trial, and thereafter he was convicted. He appealed, contending, among other things, that the trial court had no jurisdiction because the prosecution was begun in the Eastern Division of the District, while the offense was committed in the Western Division of said District. The court held that the case was governed by the decision of the Supreme Court in Salinger v. Loisel, supra, and, further, that because the indictment was presented by strangers to him, who were presumably unbiased and unprejudiced, he could not be hurt or prejudiced thereby. See, also, Logan v. U. S., 144 U. S. 263, 297, 12 S. Ct. 617, 36 L. Ed. 429; Poffenbarger v. U. S., 20 F.(2d) 42, 45 (C. C. A. 8); Clement v. U. S., 149 F. 305, 308, 309 (C. C. A. 8).

But appellant claims that there was a grand jury waiting upon the court for the Northern Division of the Southern District of California at the time the indictments were filed. This is borne out by the record, so far as cause No. 1790 is concerned. However, error is never presumed; the grand jury which found the latter indictment may have had the matter submitted to it before that in the Northern Division was impaneled.

At any event, as said in Hill v. U. S., 15 F.(2d) 14, 15 (C. C. A. 8), "It is and must be conceded that, under section 53 of the Judicial Code, * * * an indictment may be found in one division of a district for a crime committed in another division of the same district, provided the grand jury is impaneled for the entire district." [Cases cited.] It appears that the grand juries which returned the indictments were impaneled for the entire district. To quote from the indictments: "The grand jurors for the United States of America, impaneled and sworn in the Central Division of the Southern District of California, and *inquiring for the Southern District of California,* upon their oath present," etc. (Italics ours.) And the impanelment proceedings are entitled: "In the matter of the impanelment of the Grand Jury for the September, A. D. 1934 term of the District Court of the United States, within and for the Southern District of California, at Los Angeles," etc.

In addition, there could have been a second grand jury in the District for, by section 284 of the Judicial Code (28 USCA § 421), it is provided that "if the United States attorney for any district which has a city or borough containing at least three hundred thousand inhabitants shall certify in writing to the district judge, or the senior district judge of the district, that the exigencies of the public service require it, the judge may, in his discretion, also order a venire to issue for a second grand jury."

Appellant directs our attention to certain statements of the government's counsel made during the course of his argument to the jury. The statements are to the effect that great quantities of yeast, cans, and sugar were shipped to the still by the Italian Wholesale Grocery Company. Another statement was made concerning the records of a finance company and their connection with one Frank Staccio and a statement was made relative to

the reconsignment of the carload of sugar following the raid on the still. Borgia's counsel objected that there was no evidence that any such quantity of yeast as that mentioned had ever come from the grocery company; and that Frank Staccio was not found at the still. Counsel for the government explained his statements and the court informed counsel for appellant that he had the right to correct any statements in his argument. Later, after the second objection, the court admonished Borgia's counsel not to interrupt; that he assumed counsel's statements to be correct; and that both counsel had equal access to the jury and that mistakes of opposing counsel could then be pointed out. No objection was made to the later statement on reconsignment of the carload of sugar. It is contended that the argument was an attempt to supply the jury with essential facts not in evidence and that such practice in a circumstantial case is extremely prejudicial.

■ The court charged the jury: "Some difference seems manifest between counsel as to certain facts in the case. You must remember that counsel in their argument before the jury, and what they say at any time—they are not witnesses and are not testifying, and you are not required to give their statements any further credence or attach to them any more importance than your own recollection of the evidence compels; that is, it is your recollection of the evidence and not that of counsel that counts."

Counsel for appellee contends that the statements were merely legitimate inferences drawn from the evidence. Even if we were to concede that prosecution counsel was overenthusiastic in his argument, it is obvious that the instruction of the court cured whatever misapprehension may have arisen in the minds of the jury.

■ This court has said that "it is the general rule that improper remarks in argument by the prosecuting attorney, although prejudicial, do not justify reversal, unless the court has been requested to instruct the jury to disregard them, and has refused to do so." Diggs v. U. S. (C. C. A.) 220 F. 545, 556. As appears above, the court did instruct the jury relative to these so-called prejudicial remarks; further, we do not note in the record a request made by counsel for appellant for any other or different instruction on the point. "Error cannot be predicated upon an argument which is based upon testimony and such reasonable inferences as may be drawn therefrom." Portman v. U. S., 34 F.(2d) 406, 408 (C. C. A. 8), citing Gray v. U. S., 14 F.(2d) 366 (C. C. A. 8), and Chadwick v. U. S., 141 F. 225 (C. C. A. 6).

In Waldron v. Waldron, 156 U. S. 361, 15 S. Ct. 383, 39 L. Ed. 453, and Latham v. U. S., 226 F. 420, L. R. A. 1916D, 1118 (C. C. A. 5), cited by appellant, the subject-matter commented upon was not in evidence at all, while in Fitter v. U. S., 258 F. 567 (C. C. A. 2), the court stated the general rule, held the comment unprejudicial, and the reversal was had upon another ground.

■ It is asserted that the testimony given by the two police officers of Burbank, Cal., relative to the wrecked truck, as well as the evidence of the making of the two payments thereon by the Italian Wholesale Grocery Company, should not have been permitted, and that the motions to strike the same should have been granted. This evidence was admissible. The two payments made by the Italian Wholesale Grocery Company were made upon the truck wrecked in Burbank. On the following day another truck of the same make was purchased from the same dealer who sold the wrecked car. This latter truck was the one seized at the still on the night of the raid. The circumstances are well connected and the evidence, therefore, admissible.

■ We find little merit in the argument that improper matter found its way into the jury room, as part of Government's Exhibit No. 8, for the so-called prejudicial matter did not refer to Frank Borgia; it was sent in through mistake, and almost immediately withdrawn.

■ As to the motion for reassignment of indictment No. 1790 for trial by a different judge on the ground that appellant desired to call the judge to whom the case was assigned as his witness to establish matters, excerpts of which appear in the record, we are not persuaded that such evidence would have been admissible. If the facts outlined were pertinent, it would seem that they could have been established otherwise than by calling the judge, but no such effort was made, nor was any offer of proof tendered.

■ Likewise, there was no error in the imposition of the fines, penalties, and sen-

tences. Each offense was distinct and a separate punishment is provided for each in the statute. The punishment imposed was less than the maximum provided. As was said in Neely v. U. S. (C. C. A.) 2 F.(2d) 849, 852:

"It is * * * impossible to hold that the defendants could not lawfully be punished upon each of the counts upon which they are convicted. It is true that one who runs a moonshine distillery generally commits all the crimes charged by them, but those offenses are nevertheless distinct. Operating a distillery without registering it is a different thing from operating it without giving a bond. A distillery may be both registered and bonded, and yet be operated with intent to defraud the United States out of its taxes, or it may be carried on without any such intent, and yet the required sign may not be displayed, and one who knowingly works in it may therefore violate section 3279 of the Revised Statutes [26 USCA §§ 303, 304]."

■■■■ The sufficiency of the evidence to sustain the judgment is drawn into question by appellant. The evidence is wholly circumstantial. "As in all cases requiring proof by circumstantial evidence, the conclusion of guilt must follow beyond reasonable doubt from the facts and circumstances proved; but where there is, as here, substantial evidence to support every essential ingredient of the crime charged, the question is for the jury." Rosengarten et al. v. U. S., 32 F.(2d) 644, 645 (C. C. A. 6). It is well settled that where motion for directed verdict is made by defendant, and denied, the appellate court must view the evidence in the light most favorable to plaintiff. United States v. Albano, 63 F.(2d) 677 (C. C. A. 9); Benn v. U. S., 21 F.(2d) 962 (C. C. A. 9). We are of opinion that the evidence set forth above was clearly sufficient to sustain conviction, unless controverted. Appellant did not testify and the only testimony in his behalf was that given by the bookkeeper at the grocery company. The facts testified to by the witnesses for the prosecution irresistibly lead to the conclusion that Borgia was vitally interested in the distilling operations conducted in the desert at the edge of Muroc Dry Lake.

■■ It is inconceivable that Borgia did not know where the things he shipped were going and what was being done with them, and there is no testimony that he did not. It is just as ridiculous to assume that a town the size of Muroc could absorb the vast quantities of sugar shipped there. As this court said in Vukich v. U. S., 28 F.(2d) 666, 669: '

"The only question to be determined in this case is whether a person who, with knowledge of the existence of an unlawful distillery, furnishes supplies thereto to be manufactured into contraband liquor, aids or abets the carrying on of such unlawful business. The business of a distillery cannot be carried on without supplies. It follows that one who knowingly delivers supplies to such distillery aids and abets the carrying on of its unlawful business, and thus becomes, under the provisions of the statute, liable to be prosecuted and punished as a principal."

See, also, Cvitkovic et al. v. U. S., 41 F.(2d) 682, 684 (C. C. A. 9). "Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal." 18 USCA § 550. It is not necessary that an aider or abettor be present at the actual commission of the offense or know details thereof. Collins v. U. S., 20 F.(2d) 574, 578 (C. C. A. 8); Parisi v. U. S., 279 F. 253, 255 (C. C. A. 2).

It is not contended that the distillery was lawfully operated; in fact, the other defendants pleaded guilty, in effect admitting its unlawful operation. Further, as appellee states in its brief, "It must be borne in mind that this still was seized in September, 1933, prior to the repeal of the National Prohibition Act [27 USCA] and at that time there could be no legitimate distillation of alcohol or spirits."

We think that the evidence, taken as a whole, points convincingly to the fact that appellant was also a party to the conspiracy, and that it is sufficient to sustain the conviction.

Judgment affirmed.