# Williams *v.* State.

## *Indictment for Forgery.*

1. *Grand jury, power of legislature to prescribe mode of drawing.*—While the constitution prohibits indictments otherwise than on the presentment of a grand jury, it imposes no restraint or limitation on legislative power in declaring the mode in which the jurors shall be drawn or summoned, or which inhibits the consultation of public convenience in determining whether the jurors shall be selected from the body of the county at large, or from a particular vicinage.

2. *Act establishing Perry Court of Quarter Sessions; constitutionality of ninth section of.*—The ninth section of the act establishing the Court of Quarter Sessions for Perry county, requiring that the grand jurors for the November term of the court, shall be drawn from the immediate vicinity in which the court was held, is not violative of the letter, spirit, or purposes, of the constitution.

3. *Forgery, what subject of.*—A writing in words and figures as follows: "Uniontown, August 23, 878. Mr. Cohen.—Please send me ten dollars, and I will sell some cotton next *weak* and pay you the money back. Henry Goldmon," may be the subject of forgery.

4. *Fraudulent intent; what sufficient averment of.*—When the intent to defraud or injure is an ingredient of an offense, the indictment may aver it generally.

5. *Proof of handwriting, what evidence not admissible to prove.*—It is error to allow a witness, who confesses having written the forged instrument under the direction and at the request of the prisoner, to write in the presence of the court and jury a similar instrument, for the purpose of comparison between the two, or to sustain such witness, when impeached.

(3)

[Williams v. State.]

APPEAL from Perry Court of Quarter Sessions.

Tried before Hon. POWHATTAN LOCKETT.

The appellant, and one Green Lewis, Jr., were jointly indicted for forgery at the November term, 1878, of the Perry Court of Quarter Sessions. In accordance with the ninth section of the act establishing the Court of Quarter Sessions, the grand jury was composed exclusively of persons who resided in Uniontown beat. The indictment charged, in the Code form, that the defendant did forge "an order for money, in words and substance as follows:

"UNIONTOWN, August 23, 878.

"Mr. Cohen.—Please send me ten dollars, and I will sell some cotton next *weak* and pay you the money back.

"HENRY GOLDMON."

On the trial, the State entered a *nol. pros.* as to Green Lewis, Jr., and upon the demand of a trial by jury, by the appellant, ordered the sheriff to summon twenty-four persons from whom to select the jury to try this case.

Elias Cohen, a witness for the State, testified that he was a clerk in the store of C. M. Cohen, who carried on business in the town of Uniontown; that on the 23rd of August, 1878, about dusk, one Jack Williams, brought to him at the said store an instrument in writing, which corresponds in words and figures with the writing set out in the indictment; that doubting the genuineness of it, he carried it to Mr. R. Cohen, who was the cashier in said store, and also to a nephew of Mr. Henry Goldman, and they concluded at once that the writing was not genuine; that Mr. Goldman spelled his name "Goldman" and signed it "H. F. Goldman," while in the instrument his name was signed "Henry Goldmon," and that Mr. Goldman drew his orders on "C. M. Cohen," while the instrument was addressed to "Mr. Cohen." This witness further testified that from his knowledge of the handwriting of Mr. Goldman, and of his manner of doing business, he did not think he could have been defrauded by it, although at first he had serious doubts of its genuineness, and would have sent the money if the instrument had been genuine.

R. Cohen testified to the same facts, except that he detected at once that the writing was a forgery and could not have been deceived by it. He also testified that he would have paid the money had the order been genuine.

Jackson Williams, another witness for the State, testified that the defendant, and Green Lewis, Jr., came to him in the afternoon of the 23rd of August, 1878, and borrowed a

lead pencil, the defendant saying that he wanted to write a note or a letter, and that then they went across the street, and later in the evening, the defendant gave him the paper above described, and requested him to carry it to Mr. Cohen, and that he did so, and gave it to Mr. Elias Cohen, who asked him where he got it from; that he told him the defendant gave it to him; that he received nothing from Mr. Cohen, who told him to tell the defendant to come back in the morning; that he delivered this message, but the defendant did not go, and that he (witness) was ignorant of the character of the paper, or what it was for.

Green Lewis, Jr., was then introduced, and testified that on the 23rd of August, 1878, the defendant came to him and requested him to write a note for him to Mr. Cohen for ten dollars, stating that Mr. Goldman had given him a note for that amount, but that he had lost it, and he wanted one just like the one he had lost, so he could get the money to carry back to Mr. Goldman; that defendant lived with Mr. Goldman at the time; that he (Williams) could not write; that they borrowed a pencil from Jackson Williams, and went over to Mr. D. Hertz's store, and witness wrote the said instrument above described, at the request of the defendant, and did not expect to share with the defendant in the money obtained thereon. The instrument described in the testimony of Elias Cohen was shown to witness and identified by him. The defense having impeached the witness Green Lewis, the State re-called him, and requested him, in the presence of the jury, to write a note similar to the one described, and the said witness wrote in the presence of the jury (without having the instrument alleged to be forged near him) in words and figures as follows:

"UNIONTOWN, August 23.

"Mr. Cohen.—Please send me $10 dollars and i will sell some cotton next week and pay you.

"HENRY

"GOLDMON."

The State then offered said writing to the jury as evidence, for the purpose of a comparison with the instrument alleged to have been forged. The defendant objected to the introduction of said writing in evidence, because it had not been proven that witness wrote it, and because it was irrelevant and immaterial. The court overruled the objection and allowed said writing to go to the jury as evidence, for the purpose of comparison as aforesaid, to which ruling the defendant excepted.

[Williams v. State.]

This was in substance all the evidence, and the court, among other things, charged the jury as follows:

"Forgery is the false making or material alteration of an instrument which has the capacity to impose a legal liability with the intent to defraud or cheat." "I charge you that this is such an instrument in writing as is the subject of the crime of forgery." "That the general averment of the intent to defraud is sufficient without alleging and proving that any particular person was defrauded, or intended to be defrauded." To each of said charges the defendant excepted. The defendant then asked the following charges in writing: "1. If the jury believe from the evidence that the instrument alleged to have been forged was such as not to impose on C. M. Cohen, or either of the Cohens, then they must acquit the defendant." "2. If the jury believe from the evidence that the instrument alleged to have been forged was in words and substance as follows, to-wit:

"UNIONTOWN, August 23, 878.

"Mr. Cohen.—Please send me ten dollars and i will sell some cotton next week and pay you the money back.

"HENRY GOLDMON,

then the said instrument is not an order for money, and the defendant can not be convicted under this indictment." The court refused to give either of these charges, and the defendant separately excepted. The jury having returned a verdict of guilty of forgery in the second degree, the defendant moved in arrest of judgment on the ground, among others, "that the instrument set forth and described in the indictment, is not an order for money." This motion was overruled, and the defendant excepted. The charges given, and the refusal to charge as requested, the admission of the paper written by the witness in the presence of the jury, and the overruling of the motion in arrest of judgment, are now assigned as error.

E. M. VARY, JOHN F. VARY, C. D. HOGUE, and GEO. H. BRADFIELD, for appellant.—1. The indictment in this case was not found by a legal grand jury. Section nine of the constitution provides "that no person' shall, for any indictable offence, be proceeded against criminally by information, &c., provided that in misdemeanors the General Assembly may dispense with a grand jury," &c. Section twelve: "That the right of trial by jury shall remain inviolate." An indictment is an accusation in writing presented by the grand jury of the county, charging a person with an indictable

offense.—Code of 1876, § 4781.    See 4 Blackstone, 302 and note; Bouv. Law Dict. title Indictment, 18 ed.    The grand jury was selected from among the best citizens of the county, *some out of every hundred.*—4 Blackstone, 302, 303; Bish. Crim. Prac. 1868, vol. 1, § 721; Proffatt on Jury Trial, § 41. And the statutes of this State have always required the grand jury to be selected from among the citizens of the county. Code of 1876, § 4732.    The act to establish the Court of Quarter Sessions of Perry county is unconstitutional, so far as it confines the selection of persons to serve as grand jurors to the residents of Uniontown beat.    It deprives the citizen of the privilege of being free from criminal proceeding, except upon the indictment of a grand jury of his county.    Statutes which would deprive a citizen of rights of person and property, without a regular trial according to the course and usage of the common law, would not be the law of the land. 1 Kent Com. 3 ed. vol. 2, pp. 12, 13 and note b.; 4 Dev. (N. C.) 15.

The instrument is not an order.    It is not properly designated by the term employed in the indictment.    It is not an order for money.    It is a mere authority for one to furnish, and another to receive money on the credit of the drawer, which, when executed, created a debt only from the drawer. 53 Ala. 494; 14 Ala. 590; 24 Ala. 489; 29 Ala. 684; Bish. on Statutory Crimes, §§ 325, 327, 335.    The court erred in permitting the witness to write before the jury, and his writing to go to the jury as evidence.    The instrument alleged to have been forged had no legal capacity to defraud anybody but Cohen, as it was a mere request addressed to Cohen to lend money, and if it was so dissimilar in handwriting, &c., as not to deceive or defraud the Cohens, it could deceive no one, and the charge ought to have been given.

H. C. TOMPKINS, Attorney-General, *contra.*—The constitution prohibits a person from being proceeded against criminally for this character of crime, except upon indictment, but does not undertake to limit the power of the legislature to prescribe qualifications as to who shall be grand jurors. As the legislature has the right to require that no person except a freeholder shall sit as a grand juror, so it would have a right to require the grand jury to be selected from a certain community, as they have done in this case, the law requiring the grand jury at one term to be selected from those subject to jury duty residing in Uniontown beat, and at the other

terms from the rest of the county.  As to the particular locality in a county the jury is to come from, the power of the legislature is not limited; the question for them is only one of expediency.  An order is defined by Worcester to be a written direction or demand addressed to a person.  An order for money, therefore, would be a written direction or demand for money.  The instrument set out in the indictment is addressed to a Mr. Cohen, directs him to send the person by whom it purports to be signed, ten dollars, and is an order for money.—*McGuire v. State*, 37 Ala. 162; *Jones v. State*, 50 Ala. 161; *Horton v. State*, 53 Ala. 489.

It is not necessary that the person committing the act of forgery should have had present in his mind an intention to defraud a particular person, if the consequences of his act would possibly defraud some person.—3 Greenl. Ev. 89; *Jones v. State*, 50 Ala. 161; *Rogers v. Marseis*, 2 C. & K. 356; *Reg. v. Hill*, 8 C. & P. 274; *Reg. v. Cooke*, 8 C. & P. 582.

The writing of the witness Lewis was admissible to corroborate him, the defence having attacked his character; and though this evidence may not be of much weight, it is still a fact which, with others, may amount to conclusive proof. 54 Ala. 528.  It may not be admissible for the purpose of comparing handwriting, but it was admissible in confirmation of the witness' testimony.—See 1 Greenl. Ev. § 581.

BRICKELL, C. J.—1. The common law required that every indictment should be found by a grand jury, twelve of whom at least must have been of the county in which the offense was committed, *freemen, and lawful leige subjects*.  It was not required that they should be selected from that part of the county, in which the defendant dwelt, or from that part in which the guilty act was done—nor were these excluded.  The law was satisfied, when they were returned from the *vicinage*, which comprehended the county.  The constitution declares "that no person shall for any indictable offense, be proceeded against criminally by information," &c., excepting particular cases, within which the present does not fall.  This is unquestionably a constitutional guaranty against prosecution otherwise than on the presentment of a grand jury.  For an indictment is at the common law, and under statutes existing prior to and at the adoption of the constitution, defined as an accusation in writing, returned into court on the oath of the grand jury of the county, charging a person with an indictable offense.  But there is no restraint or limitation on legislative power in declaring

the mode in which the jurors shall be drawn or summoned; or which inhibits the consultation of public convenience, in determining whether the jurors shall be selected from the body of the county at large, or from a particular vicinage. The ninth section of the act establishing the Court of Quarter Sessions for Perry County requiring that the grand jurors for the November term of the court shall be drawn from the immediate vicinity in which the court was held, is not violative of the letter, spirit, or purposes of the constitution. *Sanders v. State*, 55 Ala. 183.

2. That the instrument charged to have been forged is the subject of forgery, and is an order for money, and was properly so described in the indictment, is too clear for controversy. It is a written demand or direction addressed to a particular person for the payment to another of a certain sum of money, purporting to be signed or drawn by one who thereby professes to have the right to draw it. Such a writing the authorities have settled is an order for the payment of money within the meaning of kindred statutes. Bishop Stat. Crimes, §§ 327, 331. It may be the order was drawn so unskilfully that it would not have imposed upon or defrauded Cohen to whom it is addressed. It is the evil intent to defraud—that the instrument forged shall be used as genuine, and not the capacity *in fact* of the instrument to accomplish the intent, which the law regards. Fraud may not be perpetrated; no benefit may be derived from the instrument; yet, if there is the evil intent, consummated by the false making, and it is not a legal impossibility, from the want of legal capacity apparent on the face of the instrument, to deceive and defraud, the crime is committed.—2 Bish. Cr. Law, §§ 596, 603.

3. The statute declares that when an intent to injure or defraud is an ingredient of an offense, the indictment may aver it generally.—Code of 1876, § 4799.

4. Upon the question, whether the witness Lewis, who confessed having written the forged instrument at the request and under the direction of the appellant, should have been permitted to write in the presence of the court and jury a similar instrument, that the jury might institute a comparison between the instruments, we think the court below erred. The rule which has prevailed in this State, borrowed from the English courts, is, that proven specimens of handwriting, can not be received for the purposes of comparison with a disputed instrument. The only recognized exception, if it can be termed an exception, is when other papers pertinent

to the issue on trial are properly in evidence, the jury may under the instructions of the court institute a comparison. *Little v. Beasley,* 2 Ala. 703 ; *State v. Givens,* 5 Ala. 747 ; *Bishop v. State,* 30 Ala. 34 ; *Kirksey v. Kirksey,* 41 Ala. 626. The rule proceeds not only on the ground, that if it were otherwise, the issues before the jury could be indefinitely multiplied, and their attention distracted from the real matter in controversy, involving unreasonable embarrassment and delay in the administration of justice, but upon the broader ground of preventing fraud, which could be easily perpetrated in the selection of spurious, or prepared instruments for the purposes of comparison. When a comparison of writings is permitted, specimens prepared for the occasion are excluded.—1 Whart. Ev. § 715. In *King v. Donahue,* 110 Mass. 155, it was held, a party to an action, could not in the presence of the jury write his signature for the purpose of having it compared with the disputed signature. The rule in reference to proving handwriting, is, that the witness must not have derived his knowledge, from papers prepared for his instruction with a view to his testifying in the particular case.—1 Whart. Ev. § 707. Lord KENYON, in *Stranger v. Searle,* 1 Esp. 14, gave as a reason for the exclusion of the evidence, that " the party might write differently from his common mode of writing his name, through design." And in *Doe v. Suckermore,* 5 Ad. & El. 705, it was said by COLE-RIDGE, J., speaking of evidence of handwriting : " The test of genuineness ought to be the resemblance, not to the formation of letters in some other specimen or specimens, but to the general character of writing, which is impressed on it, as the involuntary and unconscious result of constitution, habit or other permanent cause, and is therefore of itself permanent. And we best acquire a knowledge of this character, by seeing the individual write at times when his manner of writing is not in question, or by engaging with him in correspondence ; either supposition giving reason to believe that he writes at the time, not constrainedly, but in his natural manner." There are cases in which a witness denies his signature, and may on cross-examination be compelled in the presence of the court to write his name for the purposes of comparison. This may fall within the latitude of a cross-examination, and whenever permitted, of that examination, the signature so written becomes a part. But it would open too wide a door for fraud, if a witness was allowed to corroborate his own testimony, by a preparation of specimens of his writing for the purposes of comparison. By design a corres-

[Philippi v. Philippi.]

pondence with, or a departure from the disputed writing could be fabricated; and whether there was such design, is an inquiry with which the jury should not be embarrassed.

This error compels a reversal of the judgment of conviction, and it is not necessary to prolong this opinion by a decision of the other questions presented. The judgment is reversed and the cause remanded. The prisoner will remain in custody until discharged by due course of law.