## CITIZENS' BANK & TRUST CO. OF MIDDLESBORO, KY., v. ALLEN.

### No. 3023.

Circuit Court of Appeals, Fourth Circuit.

Sept. 19, 1930.

B. H. Sewell, of Jonesville, Va. and E. M. Fulton, of Wise, Va., for appellant.

S. H. Sutherland, of Clintwood, Va. ·(W. L. Davidson, of Jonesville, Va., Pennington & Pennington, of Pennington Gap, Va., and S. H. & George C. Sutherland, of Clintwood, Va., on the brief), for appellee.

Before PARKER and NORTHCOTT, Circuit Judges, and GRONER, District Judge.

GRONER, District Judge.

Citizens' Bank & Trust Company brought an action against W. P. Allen and Mary Ely Allen, individually, and as partners trading under the name of Glen-Allen Stock Farm, for the amount of two certain promissory negotiable notes—one dated June 30, 1925, for $10,600, payable six months after date; the other for $2,517.17 dated August 31, 1925, payable four months after date, each purporting to be signed by Glen-Allen Stock Farm, W. P. Allen, and Mary Ely Allen. It developed during the trial that Glen-Allen Stock Farm was merely a trade-name under which W. P. Allen did business, and it was dropped from the case. Mary Ely Allen filed a verified plea denying that she had executed either of the two notes, or authorized any one to sign them for her, or in her behalf. The case was tried on this plea. The jury rendered its verdict against W. P. Allen and in favor of Mary Ely Allen. The bank moved the court to set aside the verdict as to Mary Ely Allen, and W. P. Allen moved the court to set it aside as to himself. The court overruled the motion as to Mary Ely Allen, and rendered final judgment in her favor. The questions we are called on to pass upon involve exceptions taken by the bank to sundry rulings of the court on the admissibility of evidence, as well as to the refusal of the court to charge as asked by the bank, and to particular parts of the charge as given.

At the outset the bank offered to introduce in evidence for the purpose of comparison a number of notes with signatures similar to the two notes in suit, avowing that it would show, if permitted, that the name "Mary Ely Allen" thereon was in the same handwriting as the same name on the notes sued on, and was not in the handwriting of W. P. Allen. On objection by counsel for Mrs. Allen, the trial judge heard the evidence offered by the bank in support of its tender, out of the presence of the jury, and decided that it failed to prove the genuineness of the signatures, purporting to be Mrs. Allen's on any of the notes, and therefore declined to admit them in evidence. The bank alleges this as error, but we think the trial court was right.

At common law it was not allowable to test the genuineness of disputed handwriting by comparing it with other handwriting of the parties, but by Act of February 26, 1913, 37 Stat. 683 (28 USCA § 638), the rule of the common law was changed, and it was enacted:

"In any proceeding before a court or judicial officer of the United States where the genuineness of the handwriting of any person may be involved, any admitted or proved handwriting of such person shall be competent evidence as a basis for comparison by witnesses, or by the jury, court, or officer conducting such proceeding, to prove or disprove such genuineness."

In this case the genuineness of the signatures on all the notes offered in proof was denied by Mrs. Allen. None of the writing, therefore, was admittedly hers, and the narrow question presented is whether the evidence to support the claim of the bank that the signatures were genuine, and therefore proper for use by the jury in comparison with the signatures on the notes in suit, was first for the court. We think the question should be answered affirmatively, and that the bank bore the burden of proving Mrs. Allen's signature on the notes to the satisfaction of the court as a prerequisite to the admission of such evidence before the jury. "If disputed signatures were admissible for the purpose of comparison, a collateral inquiry would be raised as to each standard; and the proof upon this inquiry would be comparison again, which would only lead to an endless series of issues, each more unsatisfactory than the first, and the case would thus be filled with issues aside from the real question before the jury." University v. Spalding; 71 N. H. 163, 51 A. 731, 734, 62 L. R. A. 817. And see Stillwell Mfg. Co. v. Phelps, 130 U. S. 520, 527, 9 S. Ct. 601, 603, 32 L. Ed. 1035, where it was held: "Whether a witness called to testify to any matter of opinion has such qualifications and knowledge as to make his testimony admissible

is a preliminary question for the judge presiding at the trial." See also Gila Valley Ry. Co. v. Hall, 232 U. S. 94, 103, 34 S. Ct. 229, 58 L. Ed. 521, where it was held that the question of admissibility of evidence, whether of law or of fact, or law and fact, is first for determination of the court. Wigmore, vol. 5 (2d Ed.) § 2550. We also think the decision of the trial judge upon this fact is conclusive on appeal if it be fairly supported by the evidence. Stillwell v. Phelps, supra; Ry. v. Hall, supra. We have examined the evidence heard by the judge apart from the jury, and we think that there is wholly lacking proof of a clear and convincing character that the signatures on the proffered notes were in the handwriting of Mrs. Allen, or were ever made by her, and in view of this, we think the assignment is without merit.

■ The second question, raised by proper exception and assignment, is to the action of the trial court, after Mrs. Allen had written her name at the request and in the presence of the court and counsel rapidly a number of times with a number of different penpoints, and afterwards in her usual regular, and undisturbed way of writing, and again in the presence of the jury a number of times, in permitting the paper on which her signatures thus appeared to be exhibited to the jury for comparison. In Hickory v. U. S., 151 U. S. 303, 14 S. Ct. 334, 335, 38 L. Ed. 170, Mr. Chief Justice Fuller, speaking for the court, upheld the refusal of the trial court to permit a paper, which Hickory testified he had written at the trial table in court that day, to be introduced in evidence for the purpose of comparison, on the ground that the writing had been specially prepared for that purpose, quoting with approval Williams v. State. 61 Ala. 33, where it was held that it would open the door to fraud "if a witness was allowed to corroborate his own testimony by a preparation of specimens of his writing for the purposes of comparison." But we do not think the case controlling, nor do we think the principle applied has any applicability here: First, because the federal statute permitting the introduction of admitted or proved specimens of writing for comparison had not then been passed; and second, because the preparation of a writing secretly and out of the sight of those interested in observing the method of preparation, and the writing a number of times by one of one's signature at the request of a court and in the presence of court and jury are quite different things.

The reason for the rejection of the first is the opportunity of preparation of a fictitious signature, but that objection is without substance in the case of a woman, unused to courts or business affairs, called on suddenly and without warning in the presence of the courtroom to write her name undesignedly and in her natural manner, as to which the court and jury would be witness, and on the other hand it is hard to conceive of any better test for comparison. Here the court and jury observed the witness in the act of writing. They watched her write with pencil and pen, rapidly and slowly, and all of this, not as a volunteer but by direction of the court, and in passing on the motion to set aside the verdict, the judge remarked that in his opinion the "circumstances surrounding the two experiments were such that risk of deception was practically non-existent." In these conditions, we think the evidence was clearly admissible, and that the exception and assignment is without merit.

■ There remain but two other assignments to be discussed. The first grows out of this circumstance: When Mrs. Allen voluntarily went on the stand, she testified in her examination in chief that she had conveyed one-half of her property to her husband with the understanding that he would never ask her to sign a note for him or with him, and she specifically testified that not only had she not signed the notes in question, but she had never signed *any* note with her husband. In an effort to contradict this statement, the bank offered to prove that she *had* signed notes with her husband on various occasions prior to the date of the notes in suit, but the court refused to allow this evidence to be heard by the jury, and its exclusion is assigned as error. On behalf of Mrs. Allen, it is insisted that the statement she had never signed any note with her husband related purely to a collateral matter which could not and would not have been shown in evidence in support of her case if objection had been made, and counsel invoke the rule that it is not permissible to rebut or contradict a collateral matter, for to do so would merely confuse the issue, and prolong the trial through the necessity of proving an irrelevant and unnecessary fact, but we think the rule has no applicability in the circumstances. The issue before the jury was whether Mrs. Allen signed the notes in suit. In support of her denial that she did not, she testified to the agreement between her husband and herself that she would never be asked to, and that she never had. Ob-

viously if she had never signed any note for her husband, she could not have been the maker of the note in suit. Her statement, therefore, in this respect was something more than the statement of a collateral fact. If the jury believed her, it not only strengthened her main denial of having executed the notes in suit, but it was a complete answer to the plaintiff's claim, because the statement was all embracing and covered the entire field. To say that one had *never* done a particular act is the equivalent of saying that one had not done the particular act at a particular time. Her evidence in this respect was therefore neither collateral nor immaterial, and we think the jury should have been permitted to hear the evidence of the witnesses offered by the plaintiff who claimed to have seen her do certain acts in connection with notes of her husband which convinced them she had signed them. It is quite true, as was suggested by the learned district judge, that their evidence was sufficient only to justify a conjecture that she had signed the notes which they claimed she had signed, for no one of them claims actually to have seen her write her signature; but the circumstances, which they would have testified to, tend strongly against her general denial, and we think in this view it was proper, in contradiction of her evidence, that this should have been submitted to the jury that they might consider it in connection with all the other evidence in the case in order thus to winnow the true from the false for its effect upon the main issue.

The last assignment which need be discussed is this: The bank charges error in the rejection by the court of certain prayers urged by it, and also as to a part of the charge as given. Inasmuch as the action must be tried again, it will serve no good purpose, we think, to discuss in detail the tendered prayers or the charge of the court as a whole, except as the same question is likely to arise again, and this involves only one point. As to this we think the bank was entitled to have the jury charged that if they believed from the evidence that Mrs. Allen, some three or four years before the commencement of the action, went into the bank, and asked to see the $10,600 note, and when she had seen it, stated the signature was not hers and she had not signed it, but upon the bank's statement that it would therefore have to take immediate steps to collect it from her husband, she asked its president not to take steps to this end, nor to inform her husband that she had discussed the matter with him, and agreed that if it would renew the note and carry it along from time to time, she would sign the renewals, and the bank acting upon this promise did several times renew the note after duly sending her notices of the maturities as they occurred, and in good faith accepted renewal notes believing that the signature thereon was her signature and relying upon her promise, she would thereafter be estopped, in the event she received the notices or otherwise knew of the bank's action, to deny the genuineness of the signature. The learned district judge in refusing to give such an instruction was of opinion that it would be improper because there was not sufficient evidence that the renewals of the note made from time to time were known to Mrs. Allen, or that evidence of the maturity and extension of the note from time to time had been duly given to her, and bases his ruling in this regard upon the denial by Mrs. Allen of the receipt of the notices, and the failure of the bank to do more than show that the notices were on each occasion put in the bank's mail, without showing also the deposit of the mail in the post office. McCamey, the president of the bank, testified that he saw to it the notices were put in an envelope and addressed to Mrs. Allen and put in the bank's mail, which in the ordinary course was daily posted. This we think was sufficient to create a presumption that the notices were duly mailed; and in the ordinary course reached the addressee, though of course it is for the jury to say, in view of her denial, whether this is true or not. If she made the promise, and the bank acted on it to its hurt, and kept her advised, and she, with knowledge of the facts, remained silent, we think she ought not be heard to deny the genuineness of the signature. Big Vein Pocahontas Co. v. Browning, 137 Va. 34, 120 S. E. 247.

Reversed.