**UNITED STATES of America,**
**Appellee,**

v.

**Donald SWAN, Appellant.**

**No. 434, Docket 31963.**

United States Court of Appeals Second Circuit.

Argued April 10, 1968.

Decided June 3, 1968.

Certiorari Denied Oct. 28, 1968.

See 89 S.Ct. 254.

---

Ronald Gene Wohl, Asst. U. S. Atty., Brooklyn, N. Y. (Joseph P. Hoey, U. S. Atty., Eastern Dist. of New York, Brooklyn, N. Y., on the brief), for appellee.

Frederick M. Reuss, Jr., Hollis, New York, for appellant.

Before LUMBARD, Chief Judge, and WATERMAN and KAUFMAN, Circuit Judges.

LUMBARD, Chief Judge.

Donald Swan appeals from a judgment of conviction by a jury in the Eastern District of New York on twelve counts of mail fraud and one count of conspiracy to commit mail fraud. 18 U.S.C. §§ 1341, 371. His main contention on appeal is that various student records from Columbia University, used as exemplars of his handwriting, were improperly received in evidence. Under the circumstances of this case we find that the Columbia University records were admissible in evidence under 28 U.S.C. § 1731 for the purpose of establishing a standard of comparison to determine the genuineness of other handwriting which the Government sought to attribute to defendant. As the other points urged on appeal are also without merit, the judgment is affirmed.

The indictment charged Donald Swan and Andrew Portoghese with devising a scheme to defraud mail order vendors by ordering merchandise in 1963, 1964 and 1965 under assumed names and then failing to pay for the items they received. The Government sought to prove at trial that items ordered by Portoghese were sent to fictitious persons such as Dr. D. Swanson, Dr. Dwan, Dr. D. Wann, etc., at Swan's residence. Items ordered by Swan were allegedly sent to Portoghese's address in the name of Dr. F. Tavarro, and, by arrangement with a business associate of Portoghese's, to his business associate's address in the name of Dr. David Levy. At trial, nineteen persons testified for the Government, including Portoghese who pleaded guilty to one count of mail fraud on the second day of trial. No witnesses were called by the defense.

As part of its case, the government tried to show through the testimony of a handwriting expert that the various mail order forms used to order merchandise under the fictitious names of "Dr. Levy" and "Dr. Tavano" had been filled out by Swan. Before calling its handwriting expert, the government introduced into evidence, through the testimony of an Assistant to the Registrar of Columbia University, Swan's 1955 application to the Graduate School of Business Administration and registration and other forms submitted to the school while Swan was a student, in 1954, 1955 and 1956, which records the University had retained in the regular course of business as part of its official records. The court received the evidence as business records under 28 U.S.C. § 1732 subject to connection by the Government. Swan's counsel did not object to their admission for the purpose of proving that the signature written on the records was Swan's signature; indeed, it is admitted on appeal that the signature is Swan's signature and the pictures attached to the applications are pictures of Swan. However, defense counsel objected at

length to the admission of the records for the purpose of using the writing on the records as exemplars of Swan's writing for purposes of comparison by the handwriting expert, and at the close of the government's case moved to strike both the exhibits and the handwriting expert's testimony because the documents had not been connected.

■ We find that Judge Mishler did not err in denying defendant's motions to strike the Columbia University records and the testimony of the government's handwriting expert. "The admitted or proved handwriting of any person shall be admissible, for purposes of comparison, to determine genuineness of other handwriting attributed to such person." 28 U.S.C. § 1731. The government proved the genuineness of the exemplars to the satisfaction of the court. In order to secure reversal on appeal of the trial court's ruling defendant must show that the ruling was not fairly supported by the evidence. Citizens' Bank & Trust Co. of Middlesboro, Ky. v. Allen, 43 F.2d 549, 550–551 (4th Cir. 1930); Annotation: Genuineness of Exemplar-Proof, 41 A.L.R.2d 575, 582 (1955); 2 Wharton's Criminal Evidence § 582 (R.A. Anderson 12th ed. 1955); 7 Wigmore on Evidence § 2020 (3rd ed. 1950). The defendant has failed to meet this burden.

Co-defendant Portoghese testified that the printing on the Columbia University records is "similar to Donald Swan's," and that the printing looked the same as the printing on some checks that Portoghese received from Swan. While Portoghese was not absolutely certain that the printing was Swan's, the combination of his testimony and the inference which the trial judge could draw from the nature of the papers themselves and the testimony of the Assistant Registrar was a sufficient foundation for their admission for use as an exemplar of Swan's handwriting and printing. Butler v. State, 38 Ala.App. 527, 93 So.2d 441, cert. denied, 265 Ala. 694, 93 So.2d 445 (1956).

The trial judge was entitled to rely in part upon the circumstantial evidence before him. Dean v. United States, 246 F. 568 (5th Cir. 1917). As in the *Dean* case, this court has examined the documents used as exemplars. We find that they are of such a character that there is a strong inference that they were filled out by the signer. Each of the registration cards has a space marked "STUDENT'S SIGNATURE" in which appellant admittedly wrote "Donald A. Swan." At the top of each card are instructions: "Print your name exactly as it should appear on all official records." On each card the name "Donald Arthur Swan" is printed in the same color ink as Swan's admitted signature. The body of the cards and other documents are filled out in a mixture of block printing and script. In each case the writing is all in the same color ink and appears similar to the printed and written names. An Assistant Registrar of Columbia University testified at the trial that it is customary for students to fill out their own registration cards. This clearly is sufficient evidence from which the trial judge could infer that Swan, who admittedly signed the cards, also filled them out. See United States v. Liguori, 373 F.2d 304 (2d Cir. 1967).

■ At the time the evidence was received, the trial judge instructed the jury that whether or not the writing in the Columbia University records was the script and printing of defendant Swan was a question of fact for their determination. Williams v. Conger, 125 U.S. 397, 413–415, 8 S.Ct. 933, 31 L.Ed. 778 (1888). Since defense counsel did not request the court to repeat this instruction in the charge or object to its omission, the earlier instruction during the course of the trial was sufficient. United States v. Indiviglio, 352 F.2d 276 (2d Cir. 1965).

■ Appellant urges some other points which do not require extended discussion. As part of the Government's case, various so-called "test sheets" kept by a postal inspector to record facts concerning various parcels delivered to

Swan's residence [1] were admitted into evidence as business records of the Post Office Department. Appellant contends these were not business records because they were prepared in connection with litigation and should therefore not have been admitted. See Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943). Even if we were to agree that these records were not admissible as business records under 28 U.S.C. § 1732, their admission into evidence was harmless error. The postal inspector who filled out the sheets was present at the trial and testified that he had an independent recollection of the events recorded on the sheets. Appellant had ample opportunity to test the veracity of the reports included in the test sheets by cross examination of this witness.

■ Appellant contends that charts exhibited to the jury in connection with the testimony of the Government's handwriting expert were prejudicial to Swan because the side of the chart showing portions of the Columbia University records was denominated "known" while the portion of the chart showing excerpts from the mail order forms was labeled "questioned," and this characterization would create the impression with the jury that the Columbia University records were known to be Swan's printing, a question reserved for the jury. While it would have been better for the Assist-

ant United States Attorney to have had the chart labeled "Columbia University records" rather than "known," we cannot say that permitting the introduction and use of the charts was an abuse of the judge's discretion, particularly as the judge gave the jury careful instructions to disregard the word "known." [2] United States v. Ellenbogen, 365 F.2d 982, 988 (2d Cir. 1966), cert. denied, 386 U.S. 923, 87 S.Ct. 892, 17 L.Ed.2d 795 (1967).

■ Appellant's final contention is that he was prejudiced by the court's supplying the jurors with a "questionnaire" listing the transactions charged as counts in the indictment. Providing the jury with a list of the counts of an indictment as an aid to informed consideration by the jury is clearly proper, and usually very desirable where a multiplicity of counts are submitted for verdict. United States v. Bozza, 365 F.2d 206, 225 (2d Cir. 1966). While the summary handed to the jurors did not contain all of the essential elements of the crime, the judge carefully instructed the jury as to what it must find in order to convict and carefully read the indictment in full. The jury was also instructed that the summary was not evidence but only a summary of the indictment. Furthermore, the defendant was given an opportunity to have a copy of the indictment substituted for or accompany

1. Each of the so-called "test sheets" was in the form of a letter from a postal inspector to the superintendent of a post office requesting him to have the carrier making the delivery of the package indicate on the sheet the time, date and place of delivery, name of addressee and description of the person who received the package. The sheet was then returned to the postal inspector who issued it.

Before forwarding the test sheet and the package to the post office for delivery, the postal inspector recorded on the back of each test sheet the name of the person who mailed the package, date and place of mailing, the addressee and the contents of the package. The contents of each package for which a test sheet was made was marked and the method of marking was also recorded on the test sheet.

2. Before the chart was shown to the jury the trial judge instructed them: "[W]hen it comes to determining whether this was the handwriting or any part of it was the handwriting of this defendant, that is a question of fact for your determination. The mere fact that the chart says 'known writing' should not influence you by its description at all in arriving at your determination as to whether or not the documents known as exhibit three were in the handwriting of the defendant, or whether any part of it was in the handwriting of the defendant. You may decide none of it was in the handwriting of the defendant; again, if you so find, then all the testimony that this witness gives concerning what he calls a 'known' handwriting is of no value."

the precis and declined both options. Under these circumstances it was a sound exercise of the trial court's discretion to provide the jury with the list describing the counts in the indictment on which they were to render a verdict.

The judgment is affirmed.