**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Billy Dean WHITE, Defendant-Appellant.**

**No. 29730.**

United States Court of Appeals,
Fifth Circuit.

June 28, 1971.

---

Harry Connick, New Orleans, La., (Court-appointed) for defendant-appellant.

Gerald J. Gallinghouse, U. S. Atty., Robert L. Livingston, Jr., Asst. U. S. Atty., New Orleans, La., for plaintiff-appellee.

Before CLARK, Associate Justice,* and GEWIN and RONEY, Circuit Judges.

* Associate Justice United States Supreme Court (Ret.), sitting by designation.

RONEY, Circuit Judge:

This is an appeal from a jury conviction of transporting a stolen 1970 Pontiac from Vancouver, British Columbia, to Arabi, Louisiana, knowing it to have been stolen in violation of Section 2312, Title 18, United States Code (The National Motor Vehicle Theft Act). The defendant attacks the conviction on three grounds: (1) that prejudicial remarks of the prosecutor deprived him of a fair trial; (2) that handwriting specimens were improperly introduced in evidence, or in the alternative, that the jury was not properly advised as to the weight to be given the standard writings; and (3) that there was insufficient evidence to prove that defendant transported the vehicle from British Columbia to Louisiana. We affirm.

The 1970 Pontiac was owned by Avis Rent A Car. It was rented the evening of October 23, 1969, at the Vancouver Airport to be used in the Province of British Columbia and the State of Washington and to be returned not later than October 30, 1969. The name "J. V. Aranda" appeared on the rental agreement as the signature of the renter.

Dr. Jacob V. Aranda testified that around midnight of October 19, 1969, while dancing in Montreal, Quebec, he was bumped in the back and that ten minutes later he noticed his wallet was gone. He reported the incident to the Montreal police. The wallet contained many personal documents, including credit cards and driver's licenses.

Dr. Aranda's New York driver's license was used for identification in renting the Pontiac. Dr. Aranda also testified that the number of one of his credit cards, which was not recovered, looked like the number of the card used to rent the Pontiac. He received gasoline bills, which had been charged to his Esso credit card, bearing the same license number as that on the 1970 Pontiac.[1] He testified that

1. The bills traced the travels of the vehicle down to Sherman Oaks, California, to Las

the signature on the bills and the rental agreement were the same.

To connect the defendant with the Pontiac in Vancouver, the Government proved that the defendant's fingerprint was found on the rental agreement, and presented expert testimony that the defendant signed "J. V. Aranda" to the agreement. Although the rental clerk could not positively identify the defendant as the person renting the car, she felt "quite sure" he was the same man.

The evidence at the Louisiana end of the transportation is equally strong. The defendant's brother testified that on November 1, 1969, he saw the defendant driving a green 1970 Pontiac with British Columbia license plates in New Orleans. The defendant lived with his brother and his wife for part of November and during that time the brother and wife used the same car.[2] On December 4, the defendant called his brother from jail and told the brother that the car was stolen and to get rid of it.[3] The brother took the car to a parking area in Chalmette, Louisiana, abandoned it and threw away the keys. The Pontiac was discovered abandoned in a business parking lot in Chalmette and was impounded by

the police in the early morning hours of December 7, 1969. The defendant's fingerprint was found on the rear view mirror.[4]

### I.

Defendant asserts that he was denied a fair trial because of comment on his failure to take the stand, other remarks made by the prosecutor in his opening and closing arguments claimed to be prejudicial, and an implication that defendant had a prior criminal record.

*The comment on defendant's failure to take the stand* occurred during the closing argument. The prosecutor had stated that the defense could rebut the presumption raised by evidence of possession of recently stolen property when he made the critical remark that "he is not bound to take the stand at all."[5]

▮ It has long been the law in federal courts that remarks about the defendant's failure to testify constitute reversible error. Such statements infringe on the defendant's presumption of innocence and violate his Fifth Amendment right against self-incrimination by converting silence to evidence of guilt. 18 U.S.C.A.

---

Vegas, Nevada, through Kingman, Arizona, and Sonora, Texas, to New Orleans, Louisiana. Dr. Aranda also received a bill for an airplane ticket dated October 22, 1969, from Montreal to Vancouver.

2. The wife identified the car as a green 1970 Pontiac with Canadian license plates.

3. When arrested, the defendant had in his possession cards of Jacob V. Aranda, including the New York driver's license used to rent the Pontiac from Avis.

4. The defendant's mother saw him driving a dark, late model automobile in Las Vegas, Nevada, on or about October 27, 1969. That is the same date the Esso credit card charges place the automobile bearing the British Columbia license plates in Las Vegas.

5. Argument by the GOVERNMENT to the Jury:
"There is a presumption in the law that any man who is found in possession of a recently stolen automobile or anything

that has been recently stolen is presumed to know that it was stolen. He is presumed, if it's a car that has been brought in interstate commerce, he is presumed to have stolen it, himself—
MR. CONNICK:
I object to that and I don't think that's—
THE COURT:
I think you'd better let me charge the jury on the law and not elaborate on that. Just argue the facts, because while I think substantially what you are saying is true, I would like to balance it with certain countervailing positions that would be made out.
So, at this point, I will sustain the objection.
MR. HOMES:
Sir, Your Honor, I would like to clarify this for the jury, the fact is, of course, that the defense has every right to rebut that presumption. He is not bound to take the stand at all—
MR. CONNICK:
I object to this last remark, and ask for a mistrial; he is commenting on this man's failure to take the stand."

§ 3481; Wilson v. United States, 149 U.S. 60, 13 S.Ct. 765, 37 L.Ed. 650 (1893); Griffin v. California, 380 U.S. 609, 85 S. Ct. 1229, 14 L.Ed.2d 106 (1965).

■ The test in determining whether such a transgression has occurred is whether the remark was manifestly intended or was "of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." Samuels v. United States, 398 F.2d 964 (5th Cir. 1968), cert. den. 393 U.S. 1021, 89 S.Ct. 630, 21 L.Ed.2d 566 (1969).

The remark here made does not meet that test. The record reveals that when he was interrupted, the prosecutor was attempting to say that the defendant did not have to take the stand in order to rebut the presumption of possession of recently stolen property, but could introduce other evidence. He was trying to point out the necessity for some evidence in the defendant's case to rebut the legal presumption. It does not appear that the jury would have understood the remark otherwise. Luke and Henry v. Wainwright, 431 F.2d 485 (5th Cir. 1970); Garcia v. United States, 315 F.2d 133 (5th Cir. 1963); Samuels v. United States, supra; Williams v. Wainwright, 416 F.2d 1042 (5th Cir. 1969); Parks v. Wainwright, 429 F.2d 1240 (5th Cir. 1970).

■ In any event, with no manifest intention on the part of the prosecutor to comment in such a way as to make defendant's failure to take the stand evidence for jury consideration,[6] and with positive instructions to the jury by the court that nothing was to be considered or presumed from this fact,[7] and in the light of the weight of the evidence, any impropriety in the remark and the way it was made must be held to be harmless error beyond any reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

■ *Other remarks made by the prosecutor in his opening and closing arguments claimed to be prejudicial* furnish no ground for reversal. The remark that Dr. Aranda's papers and credit cards were stolen is a reasonable inference that could be drawn from the circumstances of their disappearance. Taylor v. United States, 279 F.2d 10 (5th Cir. 1960). The argument that if the

6. Mr. Homes explanation to the Court out of hearing of the jury:

"Your Honor, as you well know, there is a presumption in the law that any man in the possession of recently stolen property is presumed to have stolen it and transported it across the state line, unless he comes up with a good excuse. The reason for that is that there is no other way to prove a man actually transported the car he is in possession, having the car, and the best position to know why he got it. If he can satisfactorily explain why, where, he got it, then that will rebut the presumption. Now, he doesn't have to take the stand to rebut it. He can bring up any other evidence that he wants from anywhere, and I was about to go into that when Mr. Connick interrupted me, and he felt that I had left a false impression with the jury that he presumed that there was no way he could rebut it. Well, I was going to tell them that he could rebut it, although he does not have to take the stand, he can come up with any other explanation from any-where else that he wants to. But, unless he does, the law presumes that man to know that car was stolen. I think the jury is entitled to know that, and I don't know of any other way to explain to them that he can rebut the presumption with reminding them that he doesn't have to take the stand."

7. "Now, the law specifically provides that persons standing trial in federal court on charges of law violations may be, at their own request, but not otherwise, competent witnesses at said trial. The law, at the same time, additionally provides that the failure to make such a request shall not create any presumption against the person so charged that is standing trial. You are, therefore, expressly charged and instructed that the failure of the defendant in this case to take the witness stand and testify in his own behalf creates no presumption against him, and you must not permit that fact to weigh even in the slightest degree against the defendant, nor even allow the subject to enter into your discussions when you deliberate with a view to reaching a verdict in this case."

car was obtained "by lies and fraud" then it was stolen is a permissible inference from the evidence. Evidence that an individual rented a car in an assumed name with false identification would permit the inference that the car was being stolen. United States v. Turley, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957); Dennison v. United States, 385 F.2d 905 (5th Cir. 1967). The trial court correctly appraised the comment that the government attorney did not "enjoy prosecuting these people" in holding that it was less than a prudent remark, but not so prejudicial as to justify a mistrial. Weiss v. United States, 122 F.2d 675 (5th Cir. 1941), cert. den. 314 U.S. 687, 62 S.Ct. 300, 86 L.Ed. 550 (1941).

*The implication that defendant had a prior criminal record* is supposed to have arisen from the testimony of the probation officer concerning the signature of the defendant on documents in custody of the United States Probation Office in New Orleans. The evidence was used for the purpose of comparison with the "J. V. Aranda" signed on the rental agreement. Defendant asserts that he was prejudiced because of the official position of the witness, the fact that the witness carried a thick file with him to the stand, and exposed a "mug shot" of defendant.

Such evidence of his signature was clearly relevant under 28 U.S.C.A. § 1731, which provides that "the admitted or proved handwriting of any person shall be admissible, for purposes of comparison, to determine genuineness of other handwriting attributed to such person." The defendant successfully resisted the government's attempt to obtain his handwriting specimens by court order.

There is nothing to show that the evidence was readily available from any other source.

■ Under such circumstances, evidence is admissible to prove one crime even though it might prove another or indicate prior trouble with the law. Roe v. United States, 316 F.2d 617 (5th Cir. 1963).[8]

■ It is apparent that the judge was mindful of the possible prejudice that might occur through this witness, gave a cautionary instruction to the jury,[9] thought the mug shot was not seen by the jury [10] and made a deliberate decision that no prejudice occurred. Such matters are peculiarly for the trial court's determination and his ruling was not an abuse of discretion. Rogers v. United States, 411 F.2d 228 (10th Cir. 1969).

8. A document executed by an individual while in a federal prison was admissible as a handwriting specimen. Hardy v. United States, 199 F.2d 704 (8th Cir. 1952). A fingerprint card made at the time of an arrest for a different offense than the crime for which the defendant was being tried was properly admitted for use in handwriting comparison. Hilliard v. United States, 121 F.2d 992 (4th Cir. 1941). In analogous cases, appellate courts have upheld the admission in evidence of a police photograph, Dirring v. United States, 328 F.2d 512 (1st Cir. 1964) and testimony of prior incarceration, arrest and misconduct. Bram v. United States, 226 F.2d 858 (8th Cir. 1955).

9. THE COURT: "Ladies and gentlemen of the jury, I would like to instruct you that in connection with this witness' testimony, he is only here to identify some handwriting that allegedly might be the hand-writing of the defendant, Billy Dean White. The fact of this man's occupation happens to be with probation, the Probation Officer for the Federal Court, and the fact that he is employed in that capacity should in no way effect your judgment or your appraisal of the evidence in this case with regard to the guilt or innocence of Billy Dean White. This man, this witness, is only here for the purpose of identifying some hand-writing that has to do with Billy Dean White."

10. "Where is the mug shot? Oh, the mug shot is on the inside of the folder, but underneath about eight pages of paper. As I see it, when it's open, the mug shot does not show; and even if it did show, I think it would be still far enough away from the jury, it would be difficult, if not impossible, for the jury to distinguish this being a mug shot of this defendant or anyone else."

## II.

The Government introduced documents from the defendant's U. S. Probation file in New Orleans as a basis for a handwriting comparison with the signature on the rental agreement. Defendant contends that the documents were not properly authenticated. The term "authentication" as used in this context means proof of authorship, McCormick, Evidence 396 (1954), and whether a writing has been authenticated is a matter for the Court to determine. Citizens Bank and Trust Co. of Middlesboro, Ky. v. Allen, 43 F.2d 549 (4th Cir. 1930); 7 Wigmore, Evidence 193 (3d Ed., 1940). The specimens must be proved genuine to the satisfaction of the Court. Reining v. United States, 167 F.2d 362 (5th Cir. 1948); United States v. Swan, 396 F.2d 883 (2d Cir. 1968), cert. den., 393 U.S. 923, 89 S.Ct. 254, 21 L.Ed. 2d 259 (1968); Citizens Bank and Trust Co., of Middlesboro, Ky. v. Allen, *supra;* Annot., 41 A.L.R.2d 578 (1955); 2 Wharton, Criminal Evidence 461 (12th Ed., 1955); 29 Am.Jur.2d Evidence § 807 (1967). In order to secure reversal on appeal of the trial court's ruling the defendant must show that the ruling was not fairly supported by the evidence. United States v. Swan, *supra;* Citizens Bank and Trust Co. of Middlesboro, Ky. v. Allen, *supra.*

There is no precise method by which a specimen must be proved to be genuine and the proof may be either direct or circumstantial. Dean v. United States, 246 F. 568, 576 (5th Cir. 1917). The courts have not restricted the manner in which specimens may be proved genuine and each case must be viewed on its own facts. See Annot. 41 A.L.R.2d 583, 589 (1955). It has been said that

" * * * Authenticity may be shown by the personal knowledge acquired by persons having seen the defendant write; received letters or other documents acknowledged to be the writing

of the defendant; communicated personally with him upon the contents of those letters or documents; otherwise ner to which they relate; or by any other manner of communication between the party and the witness which, in the ordinary course of business, induces a reasonable presumption that the letter or documents were in the handwriting of the defendant."

Baker, Disputed and Forged Documents 91 (1955).

Two of the three documents which were introduced in evidence were monthly reports which the defendant was required to make to the U. S. Probation acted upon them by written answers producing further correspondence, or acquiescence by the party in some man-Office in New Orleans. Both of the monthly report forms were provided by the Probation Office during an office visit. At that time the forms were filled out, signed and left with the Probation Office. The third specimen used as a basis for comparison is a form entitled "Notice of Release and Arrival." The instructions on the form indicate that the first section is to be completed by federal prison officials at the time of an individual's release from federal custody. The original is given to the releasee. The releasee is then to fill out the second section upon arrival in the district of his residence and to give the form to the local U. S. Probation Officer.

Apparently aware of possible prejudice to the defendant, the Government did not have the probation officer detail the reporting procedures. However, the probation officer did testify that "it is very unlikely that anyone other than Billy Dean White prepared and executed these documents." We construe this as a shorthand comment on the nature of the Probation Office reporting procedures.

Considering the character of the documents [11] and the testimony of the

11. The documents here were of type that permits a strong inference that they were filled out and signed by the defendant. Dean v. United States, 246 F. 568 (5th Cir. 1917); United States v. Swan, *supra;* United States v. Liguori, 373 F.2d 304 (2d Cir. 1967).

probation officer, we hold that the ruling of the trial court that he was satisfied as to the proof of the genuineness of the exemplars was fairly supported by the evidence. The question then became a matter for the jury.

 However, the defendant contends that the jury was not properly instructed on that issue. Although the trial court stated in the presence of the jury while the witness was on the stand that the question of whether the defendant signed the documents was for the jury, the defendant asserts that the comments were directed to counsel and not to the jury. However, no objection or request for instruction was ever made by the defendant concerning this point. Any reversal must be based on plain error. United States v. Socony-Vacuum Co., 310 U.S. 150, 238, 60 S.Ct. 811, 84 L.Ed. 1129 (1940). Since the jury heard that the question of the signature on the documents was for their determination, we cannot say that the failure to instruct them further "was so palpably flagrant as to affect [the defendant's] substantive rights and constituted plain error under F.R.Crim.P. 52(b)." United States v. Toler, 440 F.2d 1242 (5th Cir. 1971); see United States v. Swan, *supra*.

### III.

The defendant's final contention that there was insufficient evidence of interstate transportation is without merit. Although the defendant apparently concedes there was sufficient evidence to tie the defendant with the car in Vancouver and in Louisiana, he argues there was no evidence to place the defendant in the car between those points. Even disregarding the evidence of the gas charges to Dr. Aranda's credit card, the jury was permitted to draw the inference that the defendant transported the car in interstate commerce. United States v. Rawls, 421 F.2d 1285 (5th Cir. 1970).

Affirmed.