**UNITED STATES of America**

v.

**William Edward HAYES, Jr., and Patrick Edward Mertens.**

**Crim. A. No. 74–191.**

United States District Court,
W. D. Pennsylvania.

Jan. 28, 1975.

Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., for plaintiff.

Andrew J. Conner, Erie, Pa., for defendant Hayes.

Theodore B. Ely, III, Erie, Pa., for defendant Patrick Mertens.

## OPINION

WEBER, District Judge.

Defendants William Edward Hayes, Jr. and Patrick Edward Mertens have filed motions for a new trial following their convictions on the conspiracy count and all substantive counts as charged in the indictment. Many of the grounds pleaded in these motions had been considered and ruled on at a previous stage of these proceedings in pretrial motions and hearings. Upon reconsideration of each of the defendants' claims we find no cause to reverse our prior holdings.

■ The first claim of error is the denial of the pretrial motions of both defendants for a bill of particulars. Among the defendants' assertions is that if the request had been granted the defendants would have been timely advised that allegations in the indictment concerning incidents "occurring on or about May 3, 1974" were allegations about incidents which in fact occurred on May 8, 1974. Defendant Mertens suggests that the prejudicial effect of the alleged misstatement of a critical date was to "preclude the possibility" of establishing an alibi defense. However, neither defendant apprises the court of what specific evidence not presented at trial would have been presented by the defense if the later date or other specific information sought by defendants had been revealed in a bill of particulars. When the motions for a bill of particulars were filed, we determined that the indictment was so drawn as to inform the defendants of the nature of the charges against them with sufficient precision to enable them to prepare their defenses and to avoid the danger of surprise at trial. See United States v. Bearden, 423 F.2d 805 (5th Cir. 1970); United States v. Rubino, 320 F.Supp. 613 (M.D.Pa.1970). Nothing now pleaded by defendants persuades us that the decision was an abuse of discretion. United States v. Addonizio, 451 F.2d 49 (3rd Cir. 1971) and United States v. Ahmad, 53 F.R.D. 194 (M.D.Pa.1971) demonstrate that the liberality with which F.R.Cr.P. Rule 7(f) is presently interpreted does not remove the discretion which trial courts must exercise in dealing with such motions in individual cases, and, when appropriate, denying the motions. Nor do we deem substantial or prejudicial any variance now claimed between the indictment and the proof at trial. The fact that the mailing and controlled delivery which occurred between May 3 and May 8 constituted an ongoing event, the "on or about" language qualifying the date in the indictment, and the obvious closeness of these two dates all serve to convince us that defendants have demonstrated no substantial variance. Moreover, where, as here, there is no showing that the alleged variance impaired defendants' ability to defend themselves, the variance must be considered harm-

less. United States v. Evans, 398 F.2d 159, 166 (3rd Cir. 1968); Russell v. United States, 429 F.2d 237, 238 (5th Cir. 1970) and cases cited therein.

■ Hayes cites as error the failure of the trial court to grant his motion to dismiss because of the government's failure to timely provide him with a handwriting expert's reports pursuant to Rule 16 and Local Rule 24. On July 17, 1974 counsel for the government agreed to timely produce for Hayes' counsel any and all forthcoming expert's reports including handwriting reports. At the same time the government advised Hayes' counsel that it would offer into evidence at trial certain letters allegedly written by co-conspirator Patrick Mertens. On August 8, 1974 and on August 26, 1974 the government received from their documents examiners reports that on the basis of the evidence then available it was not possible to positively identify Patrick Mertens as the writer of the letters in question. These reports were not provided to Hayes' counsel until November 26, 1974. It is uncontested that it was not until the government had seized an examplar from Patrick Mertens on November 12, 1974 that the government's handwriting expert had a sufficient basis to identify the letters as writings of Patrick Mertens. Hayes' claim of prejudice from the late production of the first two reports lies in his allegedly resultant failure to object to two motions by the government to continue the trial date, first from September 9, 1974 and then from November 4, 1974. We note that the continuance of the September 9 trial date was granted without objection on September 9th. On that date, during a suppression hearing, co-defendant Edward Mertens abruptly withdrew his not guilty plea and entered a plea of guilty. Hayes argues that if the government had complied with its agreement and with Local Rule 24 his counsel would have been aware of the government's inability to have admitted into evidence the critical documents and counsel would have demanded an immediate

trial. Hayes does not contend, however, and the record does not show, any wilful withholding of the first two reports from Hayes by the government. On October 4, 1974, copies of the first two reports were served on counsel for Patrick Mertens but not on counsel for Hayes, apparently because the United States Attorney was unmindful of the fact that the conspiracy count of the indictment necessitated the production of the report on Patrick Mertens' handwriting to both counsel.

Moreover, the appropriate sanctions for a failure to make discovery under Rule 16 are (1) ordering the delinquent party to permit the discovery of inspection of the materials not previously disclosed, (2) granting a continuance, or (3) prohibiting the party from introducing into evidence the material not disclosed. Rule 16(g). We chose alternative (1) and we now find no abuse of discretion in our having done so. It is only in the most unusual circumstances that a court will consider dismissal of an indictment for failure to timely provide discovery materials, and we find no such circumstances here. See 8 Moore's Federal Practice § 16.05(1), p. 16–31 and cases cited therein.

The scheduling of criminal cases and the granting of continuances of trial dates are matters within the discretion of the trial court. Before the continuances were granted in the within action several factors were taken into consideration. These included the availability of the Assistant United States Attorney originally assigned to the case, the likelihood of defendant Patrick Mertens' return to this country from Columbia in time for a trial with his co-defendant, the availability of government witnesses, the necessity for immunity proceedings for Edward Mertens, and other matters. It is impossible to now determine what effect, if any, the exhortations of Hayes' counsel for an immediate trial might have had on the court's granting of the continuances. Absent a claim that the government intentionally attempted to deprive Hayes' counsel

of access to material he was entitled to, we do not think it appropriate to attempt to reconsider the merits of the motions for continuance.

■ Hayes also claims he is entitled to a new trial because of an allegedly unlawful search of his home at 927 West 8th Street, Erie, Pennsylvania. These premises were visited twice by federal agents. The first intrusion, the one challenged here, was without a warrant and included no seizure. During the first visit, however, agents did observe such evidence in plain view as to give them probable cause to support the issuance of the warrant under which the second search and seizure was conducted. Hayes asserts that because the agents who initially entered his home did not encounter exigent circumstances as well as probable cause any seizures which ultimately resulted from this visit cannot be upheld. Defendant Hayes cites Dorman v. United States, 435 F.2d 385 (D.C. Cir. 1970), for the proposition that no warrantless search of a dwelling place is valid in the absence of several specified conditions. We read *Dorman*, however, to require a case by case analysis. We find the factors cited in *Dorman* not to be prerequisites to any valid warrantless search but only factors which had "particular pertinence in the case at bar"— a warrantless night time search upheld by the Court of Appeals.

In the instant case we find upon consideration of all the circumstances attending the initial entry by the agents that there was no need for a warrant. On May 8, 1974 federal agents effected the controlled delivery of two envelopes to 118 West 4th Street. The envelopes had been mailed from Cali, Columbia and were addressed to an Arthur Perro, 118 West 4th Street. Prior to the controlled delivery agents had intercepted the envelopes and confirmed that they contained cocaine. The agents had extracted most of the cocaine and replaced it with another white powder before the envelopes were resealed and dusted with fluorescent powder.

At about 10:30 a. m. on May 8th a postal carrier placed the two envelopes in the mailbox at 118 West 4th Street. Agents observed Edward Mertens arrive and enter the house at 3:10 p. m. Then, a few minutes later, they observed the arrival of an unidentified white male later determined to be Hayes. Hayes also entered the premises. After a few moments the two men appeared outside the house and walked together to the mailbox. Mertens removed something from the mailbox and both men showed evidence of some excitement. Both men then re-entered the residence.

A short time later Hayes left the premises driving a blue Volkswagen. Surveillance was unable to keep up with Hayes following his departure. A short time after that Mertens left the residence and began to drive away in a green Pontiac. The agents pulled Mertens over to the side of the road and arrested him. At this time one of the agents observed that Mertens had a white powder around his nostrils.

Mertens was returned to his residence at 118 West 4th Street and the agents then executed a search warrant they had for that address. The search produced certain documentary evidence, some cocaine, and some using paraphernalia. The agents knew that one of the envelopes which had been removed from the mailbox had contained a United States Customs information booklet in which the cocaine had been secreted. The search of Mr. Mertens' residence, however, produced only the original outer envelope in which the booklet had been mailed and not the booklet itself or its contents. During this search Mr. Mertens' hands were placed under a black light and were observed to fluoresce.

During the search of Mertens' residence the state police, who were assisting the federal agents, obtained the information that the blue Volkswagen license plate was registered to Linda Hayes of 947 West 8th Street. Agent Lumsden drove to that address and observed the Volkswagen parked in the

driveway. Lumsden then returned to the 4th Street address to secure the assistance of other agents to effect the arrest of Hayes. When Lumsden returned with other agents to the West 8th Street address, the Volkswagen was no longer in the driveway. As the agents approached the front door they noticed a white male looking out a front window. The front door was opened by a female, later identified as Linda Hayes. When informed that the agents were there to arrest her husband, she stated that she was the only person in the house.

The agents then entered the house. Once inside, they determined that the white male observed in the window was not Hayes. Lumsden, while standing in the living room with Mrs. Hayes and the male, observed on the top of the television set an envelope postmarked Cali, Columbia. The observed envelope was similar in several respects to other envelopes which Lumsden knew had been used to mail cocaine to Erie.

We find that the warrantless entry of the residence at 949 West 8th Street was, under the circumstances, completely justified. The agents had reason, especially following Mrs. Hayes' denial, to believe that Hayes was in the house. They had every reason to suspect that Hayes had the missing booklet and its contents in his possession when he left Mertens' home. Unless an early arrest could be effected it was very possible that this evidence would not be recovered. We also note that the entry was effected in an entirely peaceable manner.

■ The search of the premises at 5467 Glenwood Park Avenue is also challenged. Hayes claims that the Magistrate issued a warrant for the search of said premises in consideration of facts which could occur in the future and not on existing factual matters. It appears that it was only the execution of the warrant which was contingent upon future happenings and not the issuance of the warrant by the Magistrate. We find ample probable cause had been presented to the Magistrate before issuing this warrant.

■ Both Hayes and Mertens claim error in the government's implication to the jury that Edward Mertens had pleaded guilty to the conspiracy charge in the indictment. Both defendants admit, however, that no explicit mention of Edward Mertens' plea of guilty to the conspiracy charge was made within the hearing of the jury. The only statement made within the hearing of the jury was that Edward Mertens had plead guilty to his "involvement" in the matter. The jury was not aware of the specific crimes with which Edward Mertens was charged because the indictment was not sent out with the jury during their deliberations nor was it introduced into evidence. We find no error in this procedure.

■ Defendant Mertens claims error in the admission into evidence of a handwriting examplar taken October 7, 1974 in which Mertens copies, at the direction of the government agent, the text of incriminating letters alleged to have been written by him. We find no error in submitting this examplar to the jury. The circumstances under which this examplar was obtained were explained to the jury and, since the original was properly in evidence, we see no error in admitting the copy.

The final issue which we will consider in detail is our denial of motions to suppress documents seized from Patrick Mertens on November 12, 1974. It is on the basis of these documents that the government's handwriting expert was able to identify Patrick Mertens as the writer of certain incriminating letters. On November 12th, a non-jury hearing was held on a motion of co-defendant Edward Mertens to withdraw his guilty plea. Patrick Mertens was seated in the first row of spectator seats in the courtroom, and Patrick Mertens' counsel was seated at counsel table. At the conclusion of testimony on Edward Mertens' motion, the United States Attorney approached the bench and informed the court that Patrick Mertens had been writing during the hearing. Patrick Mertens' handwritten materials were then visible both

to the United States Attorney and to the judge sitting on the bench. The United States Attorney also reported that handwriting exemplars previously secured from Patrick Mertens under this court's order had proven unsatisfactory.

The United States Attorney asked that the defendant be ordered to surrender the papers in his hands to the United States Marshal for handwriting comparison. The court orally directed the defendant to surrender and the Marshal to seize the papers which were in view. The Marshal was ordered to seal the papers in an envelope and deposit the envelope with the Clerk.

After the hearing the court delivered the envelope to the counsel for the defendant for examination prior to their being viewed by any other party. Counsel was allowed to claim and receive any of the papers, without their examination by any other party, including the judge, to which he made a claim of privilege, either of self-incrimination or of attorney-client communications. There were four sheets of paper and counsel claimed a privilege with respect to three of them. These three were returned to him without examination by any other person. The counsel stated that he had no claim of such privilege with respect to the fourth sheet of paper, and this was delivered to the United States Attorney for the sole purpose of comparing handwriting. No part of the writing was to be used for any other purpose and no part of the text was to be used for any purpose except the comparison of handwriting.

Patrick Mertens moved to suppress introduction of the evidence for any purpose. Mertens based this motion on claims of violation of the right of protection against unreasonable search and seizure under the 4th Amendment, the rights to be protected against compulsory self-incrimination under the 5th Amendment and the privilege of confidentiality of communication between lawyer and client.

■ Requiring a defendant to produce examples of his handwriting does not violate the privilege against self-incrimination under the 5th Amendment:

"A mere handwriting exemplar, in contrast to the contents of what is written, like the voice or body itself, is an identifying physical characteristic outside its protection." Gilbert v. California, 388 U.S. 263, at pp. 266–267, 87 S.Ct. 1951, at p. 1953, 18 L.Ed. 2d 1178 (1967).

■ There is no violation of 4th Amendment protection against unreasonable search and seizure by compelling the production of handwriting exemplars. United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); United States v. Doe (Schwartz) 457 F.2d 895, 898–899 (3rd Cir. 1972).

■ There is no violation of the protection against unreasonable search and seizure when the objects seized are in plain view of a person lawfully present at the moment of the view.

■ The papers were not in a place protected by the 4th Amendment. They were visible in the hands of a spectator in a public courtroom. They were not concealed upon the person of the spectator requiring a search. Thus we have no question as to whether the exigencies of the situation would require a warrant. Such a doctrine applies only when there is a claim of "plain view" of the object seized where otherwise a warrant would be required, such as a seizure connected with an arrest of a suspect.

■ Fed.R.Cr.P. 17(c) allows the court to command a witness to produce books and papers . . . before the time of trial and may permit them to be inspected by the parties and their attorneys. This rule can be invoked by the United States as well as a defendant. United States v. Eli Lilly & Company, 24 F.R.D. 285 (D.N.J.1959). A defendant may comply with such an order and still object to the production of the material or its fruits as evidence against him in his trial. United States v. Ryan, 402

U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 aff'g, 444 F.2d 1095 (9th Cir. 1971).

 The court in Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886) said: "(A)ny forcible and compulsory extortion of a man's own testimony or his private papers to be used as evidence to convict him of crime, or to forfeit his goods, is within the condemnation of the [4th and 5th Amendments]." But it is only evidence of a testimonial nature that cannot be compelled from an accused. 8 Wigmore, Evidence § 2263 (McNaughton ed.) See also United States v. White, 444 F.2d 1274 (5th Cir. 1971) and United States v. Rogers, 475 F.2d 821 (7th Cir. 1973).

Chief Justice Burger, when a judge of the Court of Appeals recognized the dual nature of a handwritten text.

"Words can be used as physical evidence apart from their communicative content; even if an accused were coerced to write out a full confession, random words of that confession could be used as an example of the accused's handwriting, provided of course the jury did not learn they were from a confession." Lewis v. United States, 127 U.S.App.D.C. 269, 382 F.2d 817 (1967).

All other claims of error raised by defendants we have considered previously, either before trial or at trial and we have reconsidered at this point. We find no merit in them.

The motions for new trial will be denied.

ORDER

And now this 28th day of January, 1975, in accordance with the foregoing Opinion it is hereby ordered:

(1) The Motion of Defendant William Edward Hayes, Jr. for a new trial is denied;

(2) The Motion of Defendant Patrick Edward Mertens for a new trial is denied.